UNITED STATES, Appellee,

v.

Walter Nathan BABCOCK, Seaman, U. S. Navy, Appellant.

No. 40148/NA.
NCM 80–0998.

U. S. Court of Military Appeals.

Aug. 30, 1982.

For Appellant: *Captain W. J. Ciaravino*, USMCR (argued); *Lieutenant Commander Patrick A. Fayle*, JAGC, USN (on brief).

For Appellee: *Captain Charles W. Dorman*, USMC (argued); *Captain T. C. Watson, Jr.*, JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

In November 1979, a general court-martial composed of officer and enlisted members tried appellant at the Naval Legal Service Office on Guam. Contrary to his pleas, he was found guilty of various drug-related offenses—under 11 specifications of a charge alleging violation of Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892, and one specification which involved Article 134, U.C.M.J., 10 U.S.C. § 934. The court members sentenced Babcock to a bad-conduct discharge, confine-

ment and partial forfeitures for 3 years, and reduction to the lowest enlisted grade. Immediately after sentence was adjudged on November 10, 1979, appellant requested deferment of confinement; but on November 13, this request was denied by the convening authority at Guam.

A substitute convening authority, who performed the post-trial review, dismissed the charge under Article 134; reduced the duration of confinement and partial forfeitures to 30 months; and otherwise approved the sentence. Subsequently, the United States Navy Court of Military Review set aside the findings of guilty on three other specifications; reduced the period of confinement and forfeitures to 27 months; but otherwise approved the sentence. 10 M.J. 503. In turn, we granted review to consider this issue:

WHETHER THE PETITIONER WAS DENIED OF HIS RIGHTS UNDER *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975)?

## I

During the Article 32 investigation and at his trial, appellant was represented by Lieutenant Hurley, his detailed defense counsel, who was assigned to the Naval Legal Service Office (NLSO) at Guam, and by Lieutenant Commander Turner, his individual military counsel, who was stationed in the NLSO at Subic Bay in the Philippines. On December 28, Lieutenant Hurley directed a request for clemency to the substitute convening authority. However, for some unexplained reason, this request was not received at that time, and no action was taken thereon.

On January 7, 1980, the military judge received the record of trial at Subic Bay, where he was assigned, and he authenticated it on January 14, 1980. According to his receipt in the original record of trial, appellant obtained his copy on January 18, 1980. *See* Article 54(c), UCMJ, 10 U.S.C. 854(c). On January 21, 1980, Lieutenant Hurley, the detailed defense counsel, certified that he had examined the record of trial.

Because the original convening authority was disqualified by his grant of immunity to a witness who testified at appellant's trial, the case was referred for post-trial review to the Commander, Naval Base, Pearl Harbor, Hawaii. The review by his staff judge advocate—a 29-page document—was prepared on February 21, 1980; forwarded the next day to the individual military counsel at Subic Bay; and received by him on February 27, 1980. On that same day, Lieutenant Commander Turner

drafted a message to Commander Naval Base, Pearl Harbor, HI, requesting an authenticated copy of the record of trial so that I could prepare my Goode response.

This message drafted in smooth, was typed by my assistant LN1 Lovelace. I initialed it and it was sent upstairs for release by the Commanding Officer.

At this time I put this case out of my mind and returned to my normal duties. It would have been impossible for me to do my comments without the record of trial.

Around March 26, Lieutenant Commander Turner decided that the requested copy of the record was overdue and "I casually mentioned to my Commanding Officer that I hadn't received the record of trial and asked his advice on a follow-up message. He recommended I call the SJA personally on the matter." On his third attempt, Turner was able on March 28 to talk with Commander Powell, the staff judge advocate at Pearl Harbor, who "indicated he had received no message but agreed to mail the record of trial."

According to Commander Powell, he waited until March 12, 1980, before submitting the case to the convening authority for his "consideration . . . in order to provide Defense Counsel additional time in view of the need to use the mails." The convening authority acted on the case that same day "and the record of trial was forwarded to the Judge Advocate General [of the Navy] on 17 March 1980 for review by the Court of Military Review."

On April 4, 1980, Lieutenant Commander Turner completed a *Goode*[1] response which was received by Commander Powell on April 8, 1980. However, in his supplemental review dated April 23, 1980, Commander Powell advised the substitute convening authority that "you have no legal obligation at this juncture to reconsider your action since the *Goode* response was not submitted in a timely fashion."

On April 10, Lieutenant Hurley had filed several post-trial documents as enclosures to a letter which was received by the staff judge advocate on April 14. Among these enclosures was a request for clemency, dated December 28, 1979, which had never been received by the substitute convening authority. In connection with these matters Commander Powell advised "that to act on the clemency request at this late date is neither required nor desirable and further once your action was taken in the case and the accused was transferred to Norfolk, your jurisdiction over the accused terminated." Accordingly, in his supplemental review, Commander Powell recommended that the substitute convening authority "take no additional action in this case at this time and that the best interests of justice would be served by the forwarding this supplemental review and the accompanying documentation to the Court of Military Review for its consideration of such matters as it determines require attention." This advice was followed by the convening authority.

## II

■ Appellate defense counsel now argues that the 5-day period for submitting a *Goode* response never commenced to run until Lieutenant Commander Turner had received a copy of the record of trial. The premise for this argument is that a defense counsel cannot be expected to prepare a *Goode* response unless he is in possession of a record of trial.

We agree that a record of trial should be available to the defense counsel in connection with the proper performance of his post-trial duties. *See United States v. Cruz*, 5 M.J. 286 (C.M.A.1978); *United States v. Cruz-Rijos*, 1 M.J. 429, 432 (C.M.A. 1976). Moreover, we recognize that because Lieutenant Commander Turner was the lead counsel during trial, the staff judge advocate apparently had anticipated that he would prepare the *Goode* response. However, we cannot ignore the fact that the detailed defense counsel was never excused by appellant and continued to perform his duties throughout the trial and thereafter. Indeed, immediately after the trial was completed on November 10, Lieutenant Hurley apparently was involved in preparing the request for deferment of confinement; in December, he had drafted a request for clemency; in January, he examined the record in behalf of the defense; and in April, he renewed appellant's December request for clemency. In every way, "he remained part of the defense team." *United States v. Jeanbaptiste*, 5 M.J. 374, 377 n.4 (C.M.A.1978). Significantly, we have heard no claim that the copy of the record of trial—for which appellant signed a receipt on January 18—was not fully available to Lieutenant Hurley from that time forward. Moreover, Commander Powell, the staff judge advocate at Pearl Harbor, was not placed on notice that this copy furnished to Babcock pursuant to Article 54(c) would not be available to Lieutenant Commander Turner, the individual military counsel. Until he had reason to believe that Turner lacked access to the record, Powell had no obligation to mail a copy to him in the Philippines. The principle enunciated in *Cruz* and *Cruz-Rijos* that a record of trial should be available to the defense counsel for his post-trial duties does not include any requirement that, without request, the staff judge advocate provide a copy to an accused and *all* defense counsel. Instead, the defense counsel bear some responsibility for coordination with their client and between themselves. Therefore, under the circumstances of this case any requirements of *Goode* and *Cruz* that the record be available to defense counsel were satisfied.

1. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

■ Appellate defense counsel also insists that, even so, we should direct remand for further review of this case by the substitute convening authority, in order that he might take into account the comments of defense counsel with respect to the staff judge advocate's review.[2] In appellant's view, he should not be prejudiced by the administrative error which delayed his counsel's response until after the convening authority had acted, even though the Government was not at fault. We rejected a similar argument in *United States v. Kincheloe*, Dkt. No. 37,772 (C.M.A.1982). While the Court of Military Review is free under such circumstances to remand for further review by the convening authority, it also may proceed to review the record without remand. Of course, if that court determines that the absence of a *Goode* response was not by choice, it should not invoke the waiver which usually would result from failure to submit a *Goode* response.[3]

## III

The decision of the United States Navy Court of Military Review is affirmed.

COOK, Judge (concurring):

As one who was present at the beginning, I have been one of the strong supporters of the mandate in *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).[1] I believe that compli-

ance with this procedure provides significant benefits both to the Government and to the accused. *See United States v. McAdoo*, Dkt. No. 39,386 (C.M.A.1982). However, it was never intended that *Goode* should become a trap for the Government or that defense counsel may do nothing and later claim some inadequacy in the good-faith attempt by the Government to effect service of the review. *See United States v. Iverson*, 5 M.J. 440, 447 (C.M.A. 1978) (Cook, J., concurring in the result). Here the record was properly served on the accused and was examined by his *detailed* defense counsel. *See United States v. Larneard*, 3 M.J. 76 (C.M.A.1977). Some thirty days later the review of the staff judge advocate was served on the *individual* defense counsel who apparently acted as lead counsel at trial. Neither defense counsel made any effort to communicate with the other. The fact that individual defense counsel's message requesting a copy of the record was apparently lost does not excuse his failure in waiting one month before taking follow-up action. Recognizing the distances involved—which are great—I still believe that the service on one member of the defense team of the review is sufficient compliance by the Government with the *Goode* mandate absent any indication of negligence by the Government. Of course, following the suggested procedures set out in *United States v. Robinson*, 11 M.J. 218 (C.M.A.1981), would have avoided this situation.[2] I believe that the fault, if there is

---

2. After his action was promulgated, the convening authority was not entitled to review the case further. *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). Thus, he could take no action on the *Goode* response, unless the case was remanded to him.

3. We reiterate this passage from *United States v. Kincheloe*, Dkt. No. 37,772 (C.M.A.1982).

   [I]f trial defense counsel believes that his client has been prejudiced in some way by the post-trial review, he must not sit idle. Instead, he should bring the situation to the attention of appellate defense counsel, who may, in turn, move to file with the Court of Military Review suitable documents explaining why the *Goode* response was not filed in a timely manner. Once aware of the reason for the failure of defense counsel to file a

*Goode* response, the Court of Military Review, unlike the convening authority, is empowered to take remedial action, if it finds that to be appropriate, and at least, the Court will not infer erroneously that defense counsel filed no *Goode* response because he believed the post-trial review to be accurate.

1. *See United States v. Hill*, 3 M.J. 295 (C.M.A. 1977); *United States v. Narine*, Dkt. No. 39,-624 (C.M.A.1982); *United States v. McAdoo*, Dkt. No. 39,386 (C.M.A.1982).

2. First, in a case where more than one defense counsel has appeared, the military judge should seek at the conclusion of the trial to establish on the record which lawyer will have the primary responsibility for preparing

any, lies more with the defense team than with the Government, and I agree that the Government should not be held to strict responsibility to determine which counsel it should make service upon.

I note that this particular issue was first raised before this Court, thus depriving the Court of Military Review from taking proper cognizance of it. Of course, in situations of this sort, the ultimate loser is the accused who has been deprived of an opportunity to make comments for consideration by the convening authority. *United States v. McAdoo, supra.* I have therefore examined the comments of individual defense counsel pertaining to the review. Since they mainly cover points normally considered by the Court of Military Review in their performance of statutory responsibilities, Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, and since the alleged deficiencies in the staff judge advocate's review were asserted by appellate defense counsel below by referring to the individual defense counsel's response, I find no prejudice to the accused requiring our corrective action. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

FLETCHER, Judge (concurring in the result):

In *United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975), this was the reason stated for the rule announced:

> This case and others coming before the Court make it apparent that the post-trial review of the staff judge advocate has occasioned recurrent complaints about what should be included in it. Similar outcries have been voiced because of the misleading nature of certain reviews.

Because of these continual and often repeated claims of error, plus the delay in determining their validity and correction, we deem it appropriate and expedient to take corrective action.

As with many judicial rules, where courts attempt to cure what appears at the time to be a major problem leading to excessive cases for appellate review, little consideration was given in this instance to possible collateral questions which might later arise from the new rule. In *Goode* the rule seemed simple enough. The defense attorney would have five days after service of the review on him to correct any perceived error in the staff judge advocate's post-trial review and, if he did not submit any corrections or comments, he waived, through all future progress of the case in the military justice system, any question concerning the review. The collateral issues that have arisen by virtue of the *Goode* rule are too numerous to mention, except for the one pertinent to this case: Whether timely delivery of the staff judge advocate's post-trial review along with the record of trial is essential for adequate preparation of a *Goode* answer.

Let me state that it is not unusual to have at least one *Goode* related question at each session of this Court. In my opinion the solution announced in *Goode* has now become a problem because of the number of cases flowing before us. The rule should be restricted as an unnecessary source of future appellate controversy.

One of the major reasons for the increased case load in this area is that defense counsel have come to rely, not on the intent of the rule as expressed by the Court, but

the *Goode* response. Secondly, where a civilian counsel is involved, it is appropriate for the judge to discuss with him in open court the post-trial responsibilities to which he will be subject under *Goode* unless specifically released therefrom by the accused. Third, if more than one military defense counsel appears at trial, the staff judge advocate—if the allocation of post-trial responsibilities is not already manifest from the record—should determine which counsel is to prepare the *Goode* response and should reflect in his review or otherwise the basis for service on

any attorney other than the appointed defense counsel. If, for whatever reason, the staff judge advocate cannot determine which defense counsel is to be chiefly responsible for post-trial defense functions, then he should serve a copy of his review on all defense counsel.

*United States v. Robinson*, 11 M.J. 218, 224 (C.M.A.1981). However, defense counsel are *not* precluded from informing the staff judge advocate as to who will perform the *Goode* function.

upon the mechanics of the rule, *i.e.*, delivery of the review and the record at least five days prior to the action of the convening authority. This reliance is misplaced. If the rule as originally announced was just to keep staff judge advocates honest as to the record and their interpretation of the law, the rule at its inception was promulgated on a false premise. Facts in the record and the current status of the laws are always subject to the individual interpretation of the reviewer, so all who read the record and study the law will not agree with any single interpretation. I believe that correction of the staff judge advocate's post-trial review was or should have been only a minor consideration of the Court when it set forth the *Goode* rule. Of course, a direct misstatement as to any testimony set forth in the review, not an interpretation of what was said, should not and cannot be tolerated by a convening authority under his responsibility as provided for in Article 64 of the Uniform Code of Military Justice, 10 U.S.C. § 864.

The primary purpose of the *Goode* rule should have been, and I believe was, to provide the convening authority, if defense counsel desired, with a counter-review from the perspective of the defendant. Generally this would refer to perceived errors in the rulings of the trial judge, failure of the Government to follow mandated procedures set forth in the Code, Manual or in court decisions, and a plea for clemency. These matters are within the knowledge of the defense counsel immediately subsequent to the court-martial, and since they are then fresh in his mind, he is in the best position to place these arguments on paper for consideration of the convening authority. He does not need the *Goode* decision to accomplish this purpose. He has the authority and I believe the responsibility to fulfill this obligation under Article 38(c) of the Uniform Code, 10 U.S.C. § 838(c).[1] To permit defense counsel to sit and wait for the review to be served upon him, demanding technical compliance with the *Goode* rule, in my mind is a ploy and not a proper procedure under the law, especially where the law has provided a tool that serves his client just as well, if not better.[2]

The initiative is placed upon the defense counsel under Article 38(c). He should also not be allowed to claim error under the *Goode* decision where he does not exercise the privilege afforded his client under this codal provision. Here, individual military counsel chose not to advance any argument to the convening authority under Article 38(c). I would therefore affirm the decision of the United States Navy Court of Military Review.

---

1. Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c), states the following:

   (c) In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he considers appropriate.

2. The provision of the Article provides that defense counsel's comments shall be attached to the record. If counsel avails himself of the opportunity to submit a brief in a timely fashion, it becomes part of the record, thereby forcing the reviewer to meet head-on any errors that the defense counsel perceives. He in effect puts the Government on the defensive.