**UNITED STATES, Appellee,**

v.

**William F. DIAMOND, Jr., Ensign, U.S. Naval Reserve, Appellant.**

**No. 42,924.**
**NMCM No. 80–2704.**

U.S. Court of Military Appeals.

Aug. 6, 1984.

For Appellant: *Commander Matthew J. Wheeler*, JAGC, USNR, and *Lieutenant Jerome A. Busch*, JAGC, USNR (on brief); *Lieutenant Lynn M. Maynard*, JAGC, USN.

For Appellee: *Commander W. J. Hughes*, JAGC, USN, and *Lieutenant Commander W.A. Dorsey*, JAGC, USNR (on brief); *Captain T. C. Watson, Jr.*, JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

In accordance with his guilty pleas, a general court-martial convicted appellant of several charges stemming from the embezzlement of $50,000.00 from the Disbursing Office aboard USS HALSEY (CG 23), when he was the disbursing officer. The court members sentenced him to dismissal from the naval service, confinement for 3 years, and forfeiture of $500.00 pay per month for 36 months. A substitute convening authority approved the sentence;[1] and the United States Navy-Marine Corps Court of Military Review later affirmed the findings and the sentence. Subsequently, we granted review of these two issues:

I

WHETHER THE CONVENING AUTHORITY ERRED TO THE PREJUDICE OF THE APPELLANT IN FAILING TO PROVIDE A COPY OF THE RECORD OF TRIAL TO THE APPELLANT IN A TIMELY MANNER AFTER IT WAS AUTHENTICATED.

II

WHETHER THE REVIEWING AUTHORITY ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN HE TOOK ACTION ON THE CASE PRIOR TO RECEIVING COMMENTS FROM DEFENSE COUNSEL ON THE STAFF JUDGE ADVOCATE'S POST-TRIAL REVIEW.

I

On April 15, 1980, appellant's trial at the Naval Base in Subic Bay, Republic of the Philippines, came to an end. On May 27, the military judge authenticated the trial record, and it was noted on the authentication page that "[t]rial defense counsel has been informed on 27 May 1980 that the record of trial is available for inspection in the files of the NLSO Subic Bay Review Section." Thereafter, on June 20, an attempt was made to serve a copy of the record on appellant. However, he did not receive the record at that time because it had been sent to Fort Leavenworth, Kansas—rather than to the Federal Correctional Facility in Morgantown, West Virginia, where Diamond had actually been incarcerated after his trial.

Meanwhile, on July 8, 1980, the Staff Judge Advocate to the Commander of the Naval Surface Group Western Pacific completed his post-trial review of appellant's court-martial. Therein he advised that, in order to comply with *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975), a copy of the review should be served on Diamond's defense counsel, who would then have five days for reply. However, as the staff judge advocate mentioned in the review, the detailed defense counsel, Lieutenant Lynn M. Maynard, was "presently assigned to the Appellate Defense Division" in Washington and the individual defense counsel, Lieutenant Michael M. McReynolds, was "presently on temporary additional duty in the Indian Ocean battle group" with an unknown "date of return to the local area." The staff judge advocate also explained in his review that *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), established a presumption that might lead to dismissal of the charges if the substitute convening authority did not take action by July 14, 1980 —90 days from the completion of trial.[2]

The review made this suggestion for dealing with the 90–day deadline:

Due to the fact that accused's trial defense counsel are not in the local area, it will not be possible to serve the defense counsel with this review and allow her to

---

1. The original convening authority, Rear Admiral Levenson, was disqualified to review the case because he had testified on an issue concerning the selection of the court-martial panel.

2. The review noted that the inflexible application of the *Dunlap* 90–day rule had been abrogated by *United States v. Banks*, 7 M.J. 92 (C.M.A. 1979), but, nonetheless, concluded that a danger existed that the case would be dismissed unless action was taken within the 90 days.

respond thereto within the time frame allowed for your action. In order to assure the accused a speedy review of his case, I recommend that you take your formal action on this case on or before 13· July 1980 without waiting for the defense counsel's response to this review. If you follow this course of action, it will be necessary that you consider her response when received and make an independent determination to either modify your original action in response to defense counsel's comments or affirm your earlier action. This procedure has been judicially sanctioned by the Court of Military Appeals, *United States v. Thomas*, 8 M.J. 1 (C.M.A. 1979).

Pursuant to this advice, the substitute convening authority acted on the record on July 11, 1980, and approved the findings and sentence in appellant's case. Eleven days later, Lieutenant Maynard, the detailed defense counsel, received his action along with a copy of the record and the staff judge advocate's post-trial review. However, in her reply, submitted on July 25, she "strongly protest[ed] any formal action on the case before receipt of the Defense Counsel's response to the Staff Judge Advocate's review." Furthermore, Lieutenant Maynard complained that there were several areas of disagreement with the review which should have been considered by the convening authority before he acted in the case and that

[p]sychologically it is difficult to change one's mind once a decision has been made. If action is taken before receipt of the response, an additional burden of persuasion will be placed upon the defense: the burden to convince one to change a course upon which one has already decided.

Moreover, she noted that appellate exhibits V through XI were missing from the record of trial that was sent to her, and

[t]herefore, the Defense Counsel is unable to comment upon any matters concerning these exhibits and specific citations are not provided for material contained therein.

On August 7, 1980, the staff judge advocate prepared a rebuttal to Lieutenant Maynard's reply. He conceded that the record did not contain the seven appellate exhibits mentioned by the defense counsel—which consisted of the questionnaires of seven court members, offered by the defense in support of a motion to dismiss the court panel because it had been improperly selected. However, he advised the reviewing authority that the defense counsel had not asserted "that the absence of Appellate Exhibits V through XI adversely affected the defense counsel's ability to prepare the basic correspondence." After responding to other matters raised by Lieutenant Maynard, he then called to the attention of the convening authority that the defense counsel was protesting the prior action in the case, and that "it will now be necessary that you consider her response and make an independent determination to either modify the original action in response to defense counsel's comments ... or affirm the earlier action."

On August 11, 1980, the reviewing authority—again following his staff judge advocate's advice—stated that he had "carefully considered" the defense counsel's comments and had once more "impartially reviewed" the record of trial and the staff judge advocate's post-trial review. Also, he acknowledged receipt of a July 22 letter from Diamond, which he said he regarded "as being in the nature of a clemency petition." However, he concluded that, "[a]fter careful consideration of all of the above," he would affirm his earlier action.

Finally, on October 14, 1980, approximately two months after the convening authority took his second action on the case, appellant received his personal copy of the trial record.

## II

As his first error, appellant claims that he has been prejudiced by the failure of the convening authority to provide him with a copy of his trial record in a timely manner. In support, he cites Article 54(c), Uniform Code of Military Justice, 10 U.S.C. § 854(c),

which states that "[a] copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated." Additionally, he relies heavily on the decision in *United States v. Cruz-Rijos*, 1 M.J. 429 (C.M.A. 1976), where this Court stated:

> The argument need not detain us for the language of Article 54(c) is clear: "A copy of the record of proceedings of each general and special court-martial shall be given to the accused *as soon as it is authenticated.*" (Emphasis added.) The Government erred in failing to provide the appellant with a copy of the record of trial "as soon as it [was] authenticated" under the plain language of the statute. The Code clearly contemplates that the transcript will be served on the accused well before action by the convening authority since such action may not precede authentication. *United States v. Shurley*, 44 C.M.R. 683 (A.C. M.R. 1971); *United States v. King*, 44 C.M.R. 680 (A.C.M.R. 1971).

*Id.* at 432. According to appellant, one of the reasons for the decision in *Cruz-Rijos* "was that without the benefit of a transcript the trial defense counsel would be seriously hindered in any attempt to file an Article 38(c), UCMJ, [10 U.S.C. § 838(c)] brief with the convening authority before the convening authority took his action."

■ We believe, however, that this case differs significantly from *Cruz-Rijos*. For one thing, on the same day that appellant's trial ended, his defense counsel had already decided not to submit to the convening authority an Article 38(c) brief.[3] Clearly, then, the absence of a record of trial did not prejudice Diamond in submitting a brief to the reviewing authority pursuant to Article 38(c), because no such brief was contemplated. Secondly, an attempt had been made to provide appellant with a copy of his trial record before the substitute convening authority took action in the case; and nobody has disputed that this attempt was not made in good faith. Indeed, it is

easy to understand how confusion could have occurred, considering that Fort Leavenworth often is the place where convicted servicepersons serve their sentences.

More significantly, the defense lawyers could have readily obtained a copy of the transcript when it was made available for inspection in the NLSO Subic Bay Review Section on May 27, 1980. Even though appellant's detailed defense counsel has denied that she was ever so informed and has asserted that she left Subic Bay on that same day, a similar denial has not come forth from the individual defense counsel, Lieutenant McReynolds; and so we may assume that he was the "trial defense counsel" who had been notified by the Government of the record's availability.

■ As we stated in *Cruz-Rijos*,
> [i]n cases in which the accused has been transferred or confined at a location different from that of his trial defense counsel, we believe the Government may satisfy the spirit of Article 54(c), while also assuring effective representation of the accused, by serving the transcript on his counsel....

*Id.* at 432. *Cf. United States v. Anderson*, 12 M.J. 195, 198 (Everett, C.J., concurring in the result). In line with this pronouncement, we conclude that here the May 27 notice to individual defense counsel that the record could be inspected constituted adequate compliance with Article 54(c).

### III

The second assignment of error, which questions the propriety of taking action on the record before receipt of the defense reply to the staff judge advocate's review, must be resolved in Diamond's favor. Under the *Goode* rule, his counsel were entitled to have at least five days to respond to the post-trial review. Also, appellant had a right to have those comments submitted to the reviewing authority for consideration *before* he acted on the case. There were major areas of disagreement, and serious

---

**3.** In a "Counsel's Statement" signed April 15, 1980, appellant was advised of his appellate rights and informed that a brief would not be submitted by counsel.

objections were raised about exhibits missing from the record. Even so, the defense counsel was denied the opportunity to present those issues to the reviewing authority before he acted on the record, because the staff judge advocate believed that the convening authority could take action on the case and later reconsider his "final" action after receiving the defense comments to the post-trial review.

 Instead, as we stated in *United States v. Babcock*, 14 M.J. 34, 37 n.2 (C.M.A. 1982),

> [a]fter his action was promulgated, the convening authority was not entitled to review the case further. *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). Thus, he could take no action on the *Goode* response, unless the case was remanded to him.

*Accord United States v. Kincheloe*, 14 M.J. 40 (C.M.A. 1982). Thus, the purported "reconsideration" by the reviewing authority was a nullity; and appellant remains deprived of his rights under *Goode*. In

4. The scenario in this case probably will not be repeated, since *United States v. Banks, supra,* has eliminated the need to complete review action within a rigid 90-day period or risk dismiss-

these circumstances, the remedy must be a new review.[4]

## IV

Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is reversed and the action of the convening authority is set aside. The record of trial is returned to the Judge Advocate General of the Navy for referral to a different officer exercising general court-martial jurisdiction for a new review and action.

Senior Judge COOK concurs.

FLETCHER, Judge (dissenting):

I would affirm the decision of the United States Navy-Marine Corps Court of Military Review. I make this decision based upon the reasoning set forth in my opinion in *United States v. Babcock*, 14 M.J. 34, 38 (C.M.A. 1982) (Fletcher, J., concurring in the result).