UNITED STATES

v.

**Laurence G. SKAAR, 353 62 7638 Seaman Recruit (E–1), U.S. Navy.**

**NMCM 85 0635.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 4 Jan. 1985.

Decided 27 June 1985.

Maj Patrick H. McGann, Jr., USMC, Appellate Defense Counsel.

Lt Gary K. Van Meter, JAGC, USNR, Appellate Defense Counsel.

Lt David O. Vollenweider, III, JAGC, USNR, Appellate Government Counsel.

EN BANC.

MITCHELL, Judge:

Appellant was tried at a special court-martial bench trial and, pursuant to his pleas, was convicted of a two and one-half year unauthorized absence. He incurred an approved sentence extending to a bad conduct discharge, three months confinement and forfeiture of pay for six months. He requested a discharge at trial.

This case was initially decided by a panel of this Court on 17 May 1985. *United States v. Skaar*, 20 M.J. 836 (NMCMR 1985). Thereafter the Government moved for *en banc* reconsideration. That motion was granted. At issue in this case is the legal effect of the convening authority's taking premature initial action, considering the provisions of Article 60(c)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860(c)(2) and Rule for Court-Martial (R.C.M.) 1107(b)(2), which, in relevant part, require the convening authority to withhold such action until after the thirtieth day following sentencing. The initial opinion in this case was that error occurred and, because the panel could not say that the appellant had not been prejudiced thereby, the case was ordered remanded to the convening authority for a new review.

■ In implementing Article 60, 10 U.S.C. § 860 R.C.M. 1105 affords an accused the opportunity to submit to the convening authority any written matters which may reasonably tend to affect the convening authority's decision regarding findings or sentence. In general and bad conduct discharge special courts-martial, the accused may submit such material within thirty days after the sentence is announced or within seven days after a copy of the record of trial is served upon the accused under R.C.M. 1104(b)(1), whichever is later. This rule adds a new dimension and perhaps breathes some new life into the older and little used Article 38(c), 10 U.S.C. § 838(c) and paragraph 77a, *Manual for Courts-Martial, 1969 (Rev.)* (MCM) briefs, its purpose being to afford the accused the opportunity to submit matters for consideration by the convening authority before the latter takes the crucial initial action (which now is the only field review of these cases.) Appendix 21, Rule 1105, MCM, 1984. *See also* S.Rep. No. 53, 98th Cong., 1st Sess. 18 (1983); H.Rep. No. 549, 98th Cong., 1st Sess. 18, 19 (1983), U.S.Code Cong. & Admin.News (1983) pp. 2177, 2184, 2185.

To assure such matters are considered, Art. 60(c)(2), UCMJ, focuses on the convening authority and, as a matter of post-trial procedure, precludes the convening authority from taking initial action until the applicable time periods have expired (absent a written waiver) or the submitted material has been considered. *See also* R.C.M. 1107(b)(2).

■ The computation of the various time periods involved in post-trial procedure is governed by R.C.M. 103(9). The appellant was sentenced on 4 January 1985 and received a copy of the record of trial on 15 January 1985. The convening authority acted on 25 January 1985, only twenty-one days following sentencing and twelve days following the appellant's receipt of the record of trial. We hold this premature action to be error. Article 60(c)(2), UCMJ; *United States v. Kerrigan*, No. 85 1665 (NMCMR 5 June 1985); *United States v. Fuse*, No. 85 0424 (NMCMR 28 March 1985); *United States v. DeGrocco*, No. 84 4431 (NMCMR 12 February 1985). The initial decision in this case, in this respect, so held.

■ A finding or a sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error of law materially prejudices the substantial rights of the accused. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). In *United States v. Jerasi*, 20 M.J. 719 (NMCMR 1985), this Court, *en banc*, reviewed the development of the concepts of general and specific prejudice. The Court of Military Appeals has all but abandoned the concept of general prejudice, except where a fundamental constitutional right is denied, in overturning prior precedent and following the lead of the United States Supreme Court in constitutional error cases. *United States v. Remai*, 19 M.J. 229 (C.M.A.1985). No fundamental constitutional right is involved in this case. The error involved in this case is similar to errors pertaining to the prophylactic rule originally pronounced in *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), now incorporated in R.C.M. 1106, which are assessed for prejudicial impact. *See United States v. Diamond*, 18 M.J. 305 (C.M.A. 1984); *United States v. Babcock*, 14 M.J. 34 (C.M.A.1982). We hold that the failure of the convening authority to afford an accused the time periods stated in R.C.M. 1105 must be assessed for specific prejudice. *United States v. Kerrigan, supra; United States v. Fuse, supra; United States v. DeGrocco, supra. See United States v. Jerasi, supra. United States v. Clark*, 19 M.J. 844 (AFCMR 1985) addresses only the matter of the acceptable form of an R.C.M. 1105 waiver and, being distinguishable, is not precedent for a contrary conclusion.

■ The Court of Military Appeals has most recently and graphically addressed analysis for prejudice in *United States v. Weeks*, 20 M.J. 22 (C.M.A.1985). Though *Weeks* involved Mil.R.Evid. 404(a)(1), a more general analytical scheme for prejudice assessment in other situations not in-

volving a fundamental constitutional right can be extrapolated:

First: The character of the rule violated. Is it a rule of substantive law, procedure or evidence?

Second: The purpose of the specific rule and its underlying policy.

Third: The degree of risk, in terms of conviction and sentence, to the appellant at the time the rule is violated. The point of risk is greatest during trial; less in the pretrial stage, where relief can be sought from the military judge and the actual trial has not begun; and even less in the post-trial stage where risk, in terms of conviction and potential sentence, has been resolved and there exists a record and extensive appellate mechanisms for determining facts and resolving error.

Fourth: The character of the potential actual harm to the accused. For example, whether the risk of conviction was enhanced, the sentence was more severe, there was a loss of opportunity to exercise a right, etc. Potential harm must be actual harm, not remote or ingenious, fanciful or imagined harm.

Fifth: The materiality of the harm to the purpose of the violated rule and its underlying policy.

Sixth: Considering the circumstances, the degree of risk of material actual harm to the accused resulting from the violation of the rule.

The case at bar involves one rule of post-trial procedure (R.C.M.1105) which, in purpose, affords the appellant the opportunity to submit material for consideration by the convening authority prior to the taking of initial action in the case and another (R.C.M. 1107(b)(2)) which procedurally sets time limits on the convening authority to effect that opportunity. The degree of risk in terms of the potential for conviction and sentence at trial was nonexistent, each decision having already been made. Logically, the potential actual harm to the appellant can only be a fair risk that a less favorable initial action would be taken because he was not afforded the full measure of authorized time to gather and submit material which he intended to submit.

■ There is no showing of a risk of material actual harm in this case. The appellant neither presented pertinent material, even belatedly, to the convening or higher authority nor does he assert that he at any time entertained an intent to submit such material. It is understandable that for a season an accused may not actually submit material which he, in fact, intended to submit because, learning of the convening authority's premature action, he gave up the ghost. At a minimum, however, the appellant must assert a colorable claim that he actually intended to submit R.C.M. 1105 material to the convening authority within the allotted time limits but did not do so because of the premature action, in order to demonstrate a risk of harm. Absent such a submission or intention, there can be no harm. To see it otherwise, we must bestow the breath of life upon this rule of clay and give it an existence of its own, thereby elevating the form over substance. *See United States v. Babcock, supra,* (Fletcher dissenting) [criticizing the wisdom of *United States v. Goode,* as exchanging one form of litigation for another to the detriment of the purpose of the decision]. If the appellant undertook the gathering of such material, its forwarding to the convening or higher authority or to his appellate defense counsel for inclusion in the record would, of course, provide evidence to strengthen his claim of actual prejudice. No R.C.M. 1105 material has been submitted to this Court, and the appellant does not claim that he ever intended to avail himself of the R.C.M.1105 opportunity. Furthermore, the character of the appellant's unsworn written statement wherein he, in effect, strikes for a punitive discharge and his failure to forward such material during the twenty-one days which passed after sentencing suggests that he would not have submitted R.C.M. 1105 material, even if afforded the full measure of time. The sentence the convening authority approved was, in terms of the potential length of the appellant's absence, lenient,

leaving little room, as a practical matter, for significant manipulation of portions of the sentence other than the punitive separation. The possibility that, because of the premature action, forfeitures may be collected a few days earlier is not actual harm in this context, since forfeiture collection is an administrative aspect of the approved legal sentence, the sentence was not increased and the act is not material to the purpose and policies in R.C.M. 1105 and 1107.

■ The majority opinion in the initial decision in this case concluded, without elaboration, that prejudice could not be determined, presumably because the four corners of the record of trial did not permit such a determination. In *United States v. DeGrocco, supra,* the Court was faced with a transgression of the R.C.M. 1105 seven-day rule (the thirty-day rule being inapplicable) because the convening authority acted on the second day following record service. Prejudice was ruled out by the Court because the record of trial showed that trial defense counsel examined the record (R.C.M. 1103(i)(1)(B) thirty-days before the convening authority acted and was served under R.C.M. 1107 fifteen days prior to the initial action. By comparison, the record of trial in the case at bar shows that trial defense counsel examined the record of trial only fourteen days before the initial action and completed the R.C.M. 1106 procedure only four days prior to the action of the convening authority. To the extent that the initial opinion in this case and *DeGrocco* suggest that the assessment for prejudice is limited to the record of trial

and specifically to the time involved in processing the case to the convening authority, the opportunity for record authentication, record service and R.C.M. 1106 comment opportunity, they are in error. First, because the assessment for prejudice is not limited to the record of trial and, second, because the error in this case relates to the opportunity of the appellant to submit R.C.M. 1105 material, not to whether R.C.M. 1106 was followed or whether trial defense counsel was afforded the opportunity to examine the record of trial at the authentication stage. This was the flaw of logic noted in the dissenting opinion of Judge Coughlin in the *DeGrocco* decision.[1] To the extent that *DeGrocco* merely looks at the foregoing factors as evidence that there was no intention by the defense to submit post-trial comments, it is correct.

■ We hold that, in cases where the convening authority prematurely takes initial action under R.C.M. 1107(b)(2), the appellant, seeking relief therefrom, bears the burden of at least asserting a colorable claim that he intended to timely submit R.C.M. 1105 material to the convening authority *and* that he was deterred from so doing by the fact of the convening authority's premature action. *United States v. Kerrigan, supra; United States v. Fuse, supra.* By colorable claim we envision, as a minimum, an offer of proof which suggests the character of the matters which the appellant intended to submit. *See United States v. Diamond, supra; United States v. Babcock, supra.* Such a proce-

1. The implication of the initial majority opinion in this case and in *DeGrocco* that this Court is bound to the four corners of the record of trial in resolving R.C.M. 1107(b)(2) problems does not give adequate deference to the context of the problem. Like the denial of speedy review situation, the assessment for prejudice often involves matters arising after the convening authority has acted, closed out the record of trial and forwarded the record for appellate review. *See United States v. Shely,* 16 M.J. 431 (C.M.A. 1983); *United States v. Bruton,* 18 M.J. 156, 157 (C.M.A.1984). There is little chance, absent forwarding of gathered R.C.M. 1105 material to this Court, that prejudice can be determined

solely by reference to the record of trial. Even where the accused, as in this case, seeks a discharge from the trial court, there still exists the realistic possibility of either a plea to the convening authority to reduce other portions of the sentence or the occurrence of a change of heart by the accused. While trial statements of the accused are rightly significant factors to be considered on the issue, they are not cast in concrete and cannot be determinative. The nature of this beast is such that resort to matters outside the record of trial to determine the risk of prejudice is proper to the resolution of this issue in appropriate cases.

dure is well established in the trial courts. M.R.E. 103(b).[2]

In view of the foregoing, *United States v. DeGrocco, supra,* and all prior decisions of the Court are overruled to the extent they are inconsistent with this holding.

Recognizing that military justice has undergone dynamic changes in the past few years, that the review process, to the special court-martial convening authority, is an intricate process and that R.C.M. 1105 and 1107 are new procedures, we are loathe to endorse a drastic prophylactic rule absent indications that there are extant derelictions more sinister than the growing pains normally associated with things new and relatively intricate.[3] Convening authorities and the legal officers who advise them are cautioned that our resolution of this case does not minimize the importance of strictly complying with the time periods set forth in the *Manual for Courts-Martial.*

Considering the foregoing, the findings and sentence as approved on review below are affirmed.

 It is noted that the staff judge advocate's review and the court-martial order do not reflect that the appellant's pleas to the lesser included offense of desertion also involved a change of the termination date of the unauthorized absence to 14 vice 17 November 1984. The court-martial order recites the action of the convening authority within the meaning of R.C.M. 1107(f)(1) verbatim but does not set forth the extraneous material required by JAG-MAN and the matters otherwise included in the initial action. The court-martial order should be amended.

GORMLEY, C.J., and Judges GREGORY, KERCHEVAL, GLADIS, COUGHLIN, CASSEL, RAPP and BARR, JJ., concur.

**2.** For example, if an accused was intending to submit R.C.M. 1105 material and was deterred from so doing by the premature action of the convening authority, but the matter intended for submission was merely duplicative of material already in the record at the time the convening authority acted, then prejudice may not exist.

**3.** R.C.M. 1105 procedure is supplemented by R.C.M. 1106 which affords service of the post-trial recommendation to the accused's counsel for the purposes of comment and involves a separate five-day waiting period. R.C.M. 1105 and 1106 procedures are supplemented further by Article 38(c), R.C.M. 1103(b)(3)(I) submission opportunities. In the Naval Service, special court-martial convening authorities have generally not been directly involved in the administration of court-martial records and post-trial procedures since 1968. This is especially true of the operating forces. Most such commands rely on general purpose administrative clerks (if they are adequately blessed), rather than legal specialists for shouldering the burden which the Military Justice Act of 1984 abruptly shifted back to those commands. This added burden, absence of specialist assets and intricate review process was bound to cause the commands some problems especially in the early stages of implementation. In this case the post-trial recommendation was served on trial defense counsel on 18 January 1985 and on 21 January 1985 trial defense counsel executed a document stating that no comments would be forthcoming. It is quite probable that the convening authority mistook the R.C.M. 1106 waiver of comment as an R.C.M. 1105 waiver and acted accordingly. There is no evidence nor any claim that the convening authority acted with sinister motive.