UNITED STATES

v.

**Michael B. DUCKWORTH, Seaman Apprentice, U.S. Coast Guard.**

**CGCMG 0108.
Docket No. 1061.**

U.S. Coast Guard Court of
Criminal Appeals.

16 Dec. 1996.

Trial Counsel: LCDR Samuel R. Watkins, USCG.

Defense Counsel: LT Richard R. Beyer, USCGR.

Appellate Defense .Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Brian Binney, USCGR.

Before BAUM, KANTOR and WESTON, Appellate Military Judges, Panel One.

KANTOR, Judge:

Tried by a general court-martial convened at Boston, Massachusetts, the accused, pursuant to a pretrial agreement, pleaded guilty to charges of violating a lawful general regulation, willful dereliction of duty, and committing an indecent act with a child. A military judge, sitting alone, sentenced appellant to be discharged from the U.S. Coast Guard with a bad conduct discharge, to be confined for one year, to forfeit all pay and allowances for one year, and to be reduced to pay grade E–1. Following sentencing, the military judge recommended that the convening authority suspend the bad conduct discharge. In compliance with the pretrial agreement,

the convening authority suspended confinement in excess of eight months and forfeiture of pay in excess of two-thirds base pay per month for six months for twelve months. The convening authority did not, however, suspend the bad conduct discharge as recommended by the military judge.

Appellate defense counsel asserts three errors. First, he claims that the action of the convening authority must be set aside because of a failure to comply with the requirement of Article 54(d), Uniform Code of Military Justice, 10 U.S.C. § 854(d), and Rule for Courts–Martial 1104(b) [hereinafter R.C.M.] that a copy of the authenticated record of trial be served on the accused. Second, he contends that an approved sentence containing an unsuspended bad conduct discharge, when considered in conjunction with the remainder of the approved sentence, is inappropriately severe. Finally, appellant alleges that this Court lacks jurisdiction to affirm his case because of the service of a civilian judge who has not been appointed in accordance with the Appointments Clause of the U.S. Constitution (U.S. Const. art. II, § 2, cl. 2). We disagree with all three assertions and affirm.

I

As to the first alleged error, a brief recitation of the post-trial processing of this case is necessary. The appellant's one-day general court-martial took place in Boston, Massachusetts, on 9 August 1995. Following announcement of the sentence and while being informed of his post-trial right to have a copy of the record of trial served upon him following authentication by the military judge, the appellant elected substituted service of the authenticated record upon his trial defense counsel in accordance with R.C.M. 1104(b)(1)(C). The record of trial was authenticated by the military judge on 13 October 1995. Prior to authentication, the trial defense counsel examined the record of trial on 22 September 1995 pursuant to R.C.M. 1103(i)(1)(B) and signed his name on the DD Form 490. The authenticated record was virtually indistinguishable from the record previously examined by trial de-

fense counsel. On 23 October 1995, trial defense counsel submitted a clemency petition to the convening authority which contained numerous letters of support from friends and relatives of the appellant. The staff judge advocate's recommendation is dated 7 November 1995, and a copy was provided to both the appellant and his trial defense counsel. No additional matters were submitted by the appellant or his counsel and the convening authority took his action on 11 December 1995. At no time during this process did the trial defense counsel request a copy of the record of trial. However, the Government concedes on appeal that neither the appellant nor his defense counsel were ever served with an authenticated copy of the record of trial prior to the action of the convening authority. According to the Appellate Government Counsel's brief, this omission may have been occasioned, in part, by the trial counsel's departure from active duty on 15 October 1995, two days after authentication by the military judge.

▪ Relying upon the provisions of Article 54(d), U.C.M.J., R.C.M. 1104(b), and the case of *United States v. Cruz–Rijos,* 1 M.J. 429 (C.M.A.1976), the appellant seeks to set aside the convening authority's action. In *Cruz–Rijos,* the appellant had similarly not been provided with a copy of the authenticated record of trial before the convening authority took his action. In responding to a suggestion that the Court of Military Appeals require service of the record of trial on an accused's counsel together with the staff judge advocate's review prior to action by the convening authority, the Court stated:

The argument need not detain us for the language of Article 54(c) [1] is clear: "A copy of the record of proceedings of each general and special court-martial shall be given to the accused *as soon as it is authenticated.*" (Emphasis added.) The Government erred in failing to provide the appellant with a copy of the record of trial "as soon as it [was] authenticated" under the plain language of the statute. The Code clearly contemplates that the transcript will be served on the accused well before action by

1. Pub.L. 98–209 redesignated former subsec. (c)    as (d).

the convening authority since such action may not precede authentication. *United States v. Shurley,* 44 C.M.R. 683 (A.C.M.R. 1971); *United States v. King,* 44 C.M.R. 680 (A.C.M.R.1971).

*Id.* at 432. Having said this, the Court also made clear that such error need not always require that the action of the convening authority be set aside. In *Cruz–Rijos,* it was held that the "spirit" of then Article 54(c) could be satisfied by serving the accused's counsel with a copy of the staff judge advocate's review in accordance with *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). By doing so, the Court's concerns over effective representation for the appellant would be assuaged. Thus, we test to determine whether or not the accused in this case was prejudiced by an inability to receive effective representation from his counsel or for any other reason during the post-trial processing of his case.

In *United States v. Diamond,* 18 M.J. 305 (C.M.A.1984), there was a failure to serve the appellant, his detailed defense counsel, and his individual military defense counsel with the record of trial and the staff judge advocate's review. However, the military judge at the time of his authentication did inform trial defense counsel, presumably individual military counsel, that the record of trial was available for inspection at the Naval Legal Services Office, Subic Bay. Appellate defense counsel in *Diamond* claimed that a principal reason underlying the *Cruz–Rijos* decision "was that without the benefit of a transcript the trial defense counsel would be seriously hindered in any attempt to file an Article 38(c), UCMJ [10 U.S.C. § 838(c)] brief with the convening authority before the convening authority took his action." *Id.* at 308. Once again, the Court found that while there was error, there had been adequate compliance with then Article 54(c) with notice of the record's availability being given to the individual military counsel. As to Diamond's Article 38(c) argument, the Court noted that he was not prejudiced by the failure to receive a copy of the record of trial because his counsel never contemplated submitting an Article 38(c) brief.

In this case, trial defense counsel submitted a clemency petition under R.C.M. 1105, a Rule which is, in part, based on Article 38(c) of the Code. Trial defense counsel did not reserve the right to submit additional matters in the clemency petition under R.C.M. 1105(d)(2) and, moreover, at no time did he ever make any request to examine the authenticated record of trial, after examining the unauthenticated record. *United States v. Lowery,* 37 M.J. 1038 (A.C.M.R.1993). Finally, trial defense counsel, after being served with a copy of the staff judge advocate's recommendation, declined to submit any additional matters to the convening authority. Under these circumstances, we do not find that the Government's failure to provide the defense counsel with substituted service of the authenticated record of trial prejudiced the appellant in any way or created a situation where he received less than effective representation from his counsel.

**II**

■ Appellant next contends that when considered in conjunction with the remainder of his approved sentence, a bad conduct discharge is inappropriately severe. Relying, in part, on the military judge's recommendation that the convening authority suspend the bad conduct discharge, appellate defense counsel asks that this Court set it aside. In response, the Government argues that appellant's contention is merely a petition for clemency masked as a sentence appropriateness argument.

■ Under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, this Court must assure that the sentence is appropriate for the offenses of which the accused has been convicted. The then Court of Military Appeals explained the distinction between sentence appropriateness and clemency in *United States v. Healy,* 26 M.J. 394 (C.M.A. 1988), by stating that "sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." *Id. at* 395. *See also United States v. Espinoza,* 27 M.J. 551 (C.G.C.M.R.1988). In exercising this ju-

dicial function, no fixed formula is available. Rather, all accused should be given individualized consideration as to the appropriateness of their punishment. Further, "proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof." *United States v. Ballard,* 20 M.J. 282 (C.M.A.1985), at 283, *citing United States v. Mamaluy,* 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959), at 107, 27 C.M.R. at 181. We now apply this test to the case at bar.

The offenses in question took place during the evening hours of 13 January and the early morning hours of 14 January 1995 aboard the USCGC WHITE LUPINE, home ported in Rockland, Maine. At the time of the offenses, appellant was 22 years of age with approximately one year of Coast Guard service. While assigned to the WHITE LU-PINE, appellant had performed deck force duties both inport and underway. He was described by his commanding officer as being reliable and not a disciplinary problem. Unfortunately, his participation in certain events on the night in question proved his undoing. The evening began uneventfully with the appellant performing duty as one of five inport watchstanders. Of all the watchstanders, he was the most junior. At the instigation of a less than responsible OOD, money was collected for a "beer run". Appellant, along with several other members of the duty section, contributed to the collection and drank some beer once it had been purchased and brought back to the ship. These actions formed the basis of the violation of the lawful general regulation which prohibited the use and possession of beer aboard the vessel.

Later that evening, two civilian girls, ages thirteen and fourteen, came aboard the vessel with less than honorable intentions in mind. As is becoming all too familiar with some of today's youth, each girl was mature far beyond her years. As the evening progressed, a half-hearted attempt was made by the OOD to get the two girls to leave the vessel but neither complied. Instead, they remained onboard the WHITE LUPINE well into the early morning hours, engaging in conversation with several crewmembers which eventually took on a clear sexual overtone. When the appellant found it necessary to use the ship's head, the thirteen year old (JC) purposefully followed him into the head where they both partially disrobed. At the appellant's suggestion, JC then performed fellatio on him. Based on his conversations with JC, appellant was led to believe she was sixteen, not thirteen years old.

The third and final offense, dereliction of duty, was an outgrowth of the prior events. While engaged with the two minor females on the mess deck, the appellant failed to conduct any of his appointed hourly security rounds of the WHITE LUPINE between the hours of 0000 and 0400 on 14 January 1995. These hourly rounds of each compartment are intended to protect the ship and its crew from flood, fire, and other damage.

Considering the above-described facts and our responsibility under Article 66, U.C.M.J., we are unable to say that the sentence of a bad-conduct discharge is inappropriately severe in this case. The offense involving JC onboard the vessel in its home port can only be described as being very serious with potential repercussions that could affect the Coast Guard's standing within the community. The maximum allowable punishment for indecent acts with a child alone is a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to E–1. By failing to conduct his appointed rounds, the appellant further compounded his situation by placing the security of his ship and fellow crewmembers below that of himself. Accordingly, we do not find the imposition of a bad-conduct discharge along with the other punishments to be disproportionate to the offenses committed. Nevertheless, we are not unsympathetic to the recommendation made by the military judge based on the record before us. However, as we said in *United States v. Hardin,* 29 M.J. 801 (C.G.C.M.R.1989), "[o]thers in our military justice system are properly tasked with reviewing a case for clemency or leniency action.... However, such steps are beyond the range of our judicial review." *Id.* at 802. Thus, while not having such clemency authority, based upon our review of the

record before us, we think this case may merit subsequent clemency action by an appropriate authority so empowered.

### III

Finally, appellant has assigned as error that this Court lacks jurisdiction to act in this case because of the service on the Court of a civilian judge who has not been appointed in accordance with the Appointments Clause of the Constitution and that the memorandum reappointment of that judge by the Secretary of Transportation is ineffective. The Court of Appeals for the Armed Forces in *United States v. Ryder*, 44 M.J. 9 (1996), has determined the appointment by the Secretary of Transportation to be authorized by Congress and consistent with the Appointments Clause of the Constitution, which resolves this assignment against appellant. Pursuant to Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings of guilty and sentence, as approved and partially suspended below, are affirmed.

Chief Judge BAUM and Judge WESTON concur.