UNITED STATES, Appellee,

v.

Private E2 Edwin COLLAZO, United States Army, Appellant.

ARMY 9701562.

U.S. Army Court of Criminal Appeals.

27 July 2000.

For Appellant: Alison Ruttenberg; Captain Paul J. Perrone, Jr., JA (on brief); Major Scott R. Morris, JA; Captain Steven P. Haight, JA.

For Appellee: Colonel Russell S. Estey, JA; Captain Katherine M. Kane, JA (on brief); Major Mary E. Braisted, JA; Captain Kelly R. Bailey, JA.

Before TOOMEY, Senior Judge, CARTER, and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of carnal knowledge of Ms. B and rape of Ms. P, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for automatic review under Article 66, UCMJ, 10 U.S.C. § 866.

In two of his six assignments of error, appellant asserts that he was denied effective assistance of counsel at trial and that the dilatory post-trial processing of his case entitles him to sentence credit. We disagree with appellant concerning the effectiveness of his military defense counsel, but agree that the untimely preparation and service of his 519-page record of trial warrant sentence relief.

### Ineffective Assistance of Counsel

Appellant alleges that his trial defense counsel, Captain (CPT) M, was ineffective concerning her defense of the carnal knowledge specification. The crux of appellant's complaint, contained in his two post-trial affidavits and appellate brief, is that CPT M failed to introduce a tape recording[1] that appellant made of a telephone conversation between Ms. B and appellant. Appellant asserts that in the taped conversation Ms. B said that she lied when she reported that she had sexual intercourse with appellant.

■ An appellant who claims ineffective assistance of trial defense counsel must establish both deficient performance and prejudice:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Wean,* 45 M.J. 461, 463 (1997) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *see also United States v. Gibson,* 51 M.J. 198, 202 (1999). This court may compel a trial defense counsel to submit an affidavit justifying his actions only after determining that the presumption of competence has been overcome. *See United States v. Lewis,* 42 M.J. 1, 6 (1995).

■ In *United States v. Ginn,* 47 M.J. 236 (1997), our superior court detailed a framework for evaluating an appellant's affidavit alleging ineffective assistance of counsel. Neither an affidavit from trial defense counsel nor a post-trial evidentiary hearing is required in every case to resolve assertions of ineffective assistance of counsel. In this case, as in many cases, review of the record itself is sufficient. *See Ginn,* 47 M.J. at 248; *Lewis,* 42 M.J. at 3–4.

■ In our judgment, appellant's case may be decided under the fourth *Ginn* principle. "[I]f the affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts, the Court may discount those factual assertions and decide the legal issue." *Ginn,* 47 M.J. at 248.

For purposes of our *Ginn* analysis, we accept as true appellant's assertion that he gave CPT M a taped telephone conversation between himself and Ms. B, during which Ms. B stated that she never had sexual intercourse with appellant and that her mother pressured her to pursue charges. The record shows that CPT M aggressively cross-

---

1. The recording has apparently been lost since the trial.

examined Ms. B and the other carnal knowledge witnesses. Ms. B was forced to admit that she had lied to appellant about her age and that, at various times, she had told a doctor, a social worker, and her mother that she did not have intercourse with appellant. However, considering the taped conversation and the record as a whole, we find that Ms. B did have sexual intercourse with appellant. UCMJ art. 66(c).

The record also established that Ms. B, Ms. B's girlfriend, and appellant's roommate collectively agreed to, and individually did, lie to criminal investigators in order to try to protect appellant. Captain M did a good job of disassociating appellant from any involvement with these three witnesses' attempts to obstruct justice on appellant's behalf. Had CPT M introduced the taped telephone conversation prepared by appellant, she would have opened the door for the government to argue that appellant was an active participant in efforts to obtain untruthful testimony on his behalf.

When determining effectiveness of counsel, our analysis does not include " 'second-guess[ing] the strategic or tactical decisions made at trial by defense counsel.' " *United States v. Grigoruk*, 52 M.J. 312, 315 (2000) (quoting *United States v. Morgan*, 37 M.J. 407, 410 (1993)). Considering the record as a whole, we are satisfied that CPT M made a tactical decision not to introduce the tape and that this decision clearly was not deficient performance on her part.

We further find that CPT M zealously defended appellant. Appellant was originally charged with the rape of Ms. B. That charge was reduced to carnal knowledge prior to trial after CPT M clearly established at the Article 32, UCMJ, investigation that Ms. B willingly engaged in sexual intercourse with appellant. At trial, CPT M obtained findings of not guilty for appellant on specifications of distributing marijuana to Ms. P and giving alcohol to Ms. B. Captain M successfully suppressed evidence that appellant had inappropriately touched Ms. B's buttocks on an occasion prior to the charged carnal knowledge incident. Captain M also presented a credible mistake of fact defense as to appellant's knowledge of Ms. B's age

(Ms. B was fifteen years and seven months old at the time of the offense).

In summary, we have carefully considered the entire record and all of the assertions in appellant's affidavits and brief concerning ineffective assistance of counsel. For the above stated reasons, we find that appellant: (1) has not overcome the presumption of competence of counsel; (2) has failed to satisfy both prongs of the *Strickland* test; and (3) was provided effective assistance of counsel.

## Post-trial Processing

### Facts

Appellant's offenses occurred in January and February 1997. His court-martial concluded on 25 September 1997. At an unspecified time after his trial, appellant retained civilian counsel, Mr. Slomsky, to represent him, along with his two military trial defense counsel, in his post-trial and appellate proceedings. Subsequently, at appellant's request, CPT F was substituted for CPTs M and S as military counsel to assist Mr. Slomsky in the preparation of appellant's clemency matters.

In a letter to CPT F, dated 4 June 1998, Mr. Slomsky wrote:

On the above date I received a fax from Pvt. Collazo relieving me as his attorney. As of this date you are his only counsel of record. . . .

I spoke to [the Chief of Criminal Law] at Fort Drum on May 29, 1998 and she advised me that the trial transcript is at the printers and is probably at the stage where it is being proof read (sic) for typographical errors. She further advised that she will send defense counsel a copy of the trial transcript sufficiently in advance of the time the appeal (sic) must be filed so that there will be approximately sixty days to draft and file the appeal on behalf of Pvt. Collazo.

The military judge authenticated the record of trial on 4 August 1998. The SJA's post-trial recommendation, dated 6 August 1998, was served on CPT F on 18 August 1998. By letter dated 23 August 1998, Ms. Ruttenberg (appellant's lead counsel before this court) formally entered her appearance

in appellant's case and requested an extension of time until 16 September 1998 to submit Rule for Courts–Martial [hereinafter R.C.M.] 1105 matters. The SJA granted that extension by letter dated 25 August 1998. Ms. Ruttenberg submitted appellant's R.C.M. 1105 matters on 16 September 1998. The SJA's addendum and the convening authority's action are both dated 30 September 1998.

A Certificate in Lieu of Receipt (of the record of trial), dated 7 October 1998, signed by the chief, criminal law, Fort Drum, New York, reads:

> I certify that on this date a copy of the record of trial in the case of *United States v. Collazo*, was transmitted to the accused's defense counsel, Allison Rutenburg (sic), Denver, Colorado and CPT [F] at Fort Meade, Maryland, by Federal Express mail. This was due to the accused firing numerous military and civilian counsel, and so it was necessary to serve a copy to his civilian attorney, and the accused's copy to his military attorney.

In his fifth assignment of error, appellant asserts that the dilatory post-trial processing of his case was prejudicial and warrants relief. Appellant, in his R.C.M. 1105 matters, neither objected to the delay in preparing or serving the record of trial nor asked the convening authority for relief on this issue.[2]

*Preparation of the Record of Trial*

Ten months to prepare and authenticate a 519–page record of trial is too long. A timely, complete, and accurate record of trial is a critical part of the court-martial process. Every soldier deserves a fair, impartial, and timely trial, to include the post-trial processing of his case.

Most of the members of this court practiced under the draconian, ninety day post-trial processing rule of *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).[3] Having suffered the problems inherent with the inflexibility of the *Dunlap* rule, we are not anxious to return to it. However, we are concerned that the dilatory habits that led to the adoption of *Dunlap* are once again creeping into post-trial processing.[4]

Staff judge advocates can forestall a new judicial remedy by fixing untimely post-trial processing now. Because of the multi-faceted demands on modern-day SJAs, the military justice component of an SJA's responsibility has diminished significantly in the fifty years since the enactment of the Uniform Code of Military Justice. Although military justice is now a smaller percentage of an SJA's practice, it is no less important. Un-

---

2. When the record of trial is not prepared in a timely manner, defense counsel should request specific relief from the convening authority under R.C.M. 1105 concerning the findings of guilty or the sentence, tailored to the facts and circumstances of the particular case, and supported by demonstrated prejudice. The convening authority would generally moot the need for additional relief by this court by documenting specific relief in his action.

3. Under the *Dunlap* rule, a presumption of a denial of a speedy trial arose when an accused was under continuous restraint after trial and the convening authority did not promulgate his final action within ninety days of the commencement of that restraint. *Dunlap*, 48 C.M.R. at 754. Five of those ninety days were reserved for defense counsel comment upon the extensive post-trial review. *See United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975). As a practical matter, it was almost impossible for the government to rebut this presumption. If more than ninety days elapsed from the date of a sentence (that included some form of restraint) to the date of the

action, the findings of guilty and the sentence were set aside, all specifications and charges were dismissed, and all rights and privileges of the accused were restored. Military courts operated under the *Dunlap* rule from 21 July 1974 until it was overruled by the Court of Military Appeals on 18 June 1979. *See United States v. Banks*, 7 M.J. 92 (C.M.A.1979).

*Dunlap* was preceded by more than four years of largely ignored critical comments by the Court of Military Appeals and The Judge Advocates General about inordinate post-trial processing delays. *See Dunlap*, 48 C.M.R. at 753; *Banks*, 7 M.J. at 93. The *Dunlap* rule was imposed after SJAs failed to solve the problem.

4. The increasing number and regularity of other post-trial processing errors heighten our concern. These errors indicate a lack of attention to detail, a lack of understanding as to proper post-trial processing requirements, or a lack of urgency because the case is "post-trial" and there are no meaningful sanctions for tardy or sloppy work. Whatever the reason, this attitude has to change.

timely post-trial processing damages the confidence of both soldiers and the public in the fairness of military justice. We must not forget the lessons of *Dunlap*.[5]

### Service of the Authenticated Record

■ "A copy of the record of the proceedings of each general and special court-martial shall be given to the accused *as soon as it is authenticated*." UCMJ art. 54(d), 10 U.S.C. § 854(d) (emphasis added); *see also* R.C.M. 1104(b)(1)(A). The Rules for Courts–Martial permit substitute service on an accused's counsel in specified situations and require that a copy of the record of trial be provided to defense counsel, if requested, for use in preparation of a response to the SJA's recommendation. *See* R.C.M. 1104(b)(1)(C) and 1106(f)(3). These rules reflect Congress's intent "that the accused and defense counsel have an adequate opportunity to present matters to the convening authority, and that they will have access to the record in order to do so." *Manual for Courts–Martial, United States* (1998 ed.), app. 21, R.C.M. 1104(b) analysis, at A21–79.

The substitute service of the authenticated record of trial in this case occurred one year after trial, two months after authentication, and one week after action. The record reflects no service on appellant. Ms. Ruttenberg indicates in her appellate brief that, on 21 July 1998, the government e-mailed her "a complete copy of the unauthenticated transcribed portions of the Record of Trial as a file attachment." Ms. Ruttenberg appears to have used this e-mail copy of the transcript to prepare her R.C.M. 1105 submissions, even though it apparently did not contain any of the trial exhibits, the Article 32, UCMJ, investigation, or other allied papers.

On 25 August 1998, when the SJA granted Ms. Ruttenberg an extension of time to submit R.C.M. 1105 matters, there should have been no confusion as to who was representing appellant. The government's failure to serve appellant or his defense counsel with a complete and authenticated copy of the record of trial at that time was error and violated the plain language of Article 54(d), UCMJ, which "clearly contemplates that the transcript will be served on the accused well before action." *United States v. Cruz–Rijos*, 1 M.J. 429, 432 (C.M.A.1976).

### Prejudice

*Banks* overturned *Dunlap* in 1979 and instituted the current rule that "applications for relief because of delay of final action by the convening authority will be tested for prejudice." *Banks*, 7 M.J. at 94 (citation omitted). As our superior court has noted, the determination of prejudice in post-trial processing cases is particularly hard to articulate:

> The very difficulty in demonstrating that prejudice to an accused has resulted from delays in completing the action provides a temptation for a convening authority to lapse into dilatory habits in completing his action. Thus, the demise of the *Dunlap* presumption may produce a return to the intolerable delays that persuaded the Court to adopt the presumption in the first place. Indeed, to help prevent such an occurrence, the **Court should be vigilant in finding prejudice wherever lengthy post-trial delay in review by a convening authority is involved.**[6]

■ Failure to serve the authenticated record of trial as required by Article 54(d), UCMJ, normally requires a new action, unless it is established that the appellant was not prejudiced thereby. *See Cruz–Rijos*, 1 M.J. at 432; *United States v. Duckworth*, 45 M.J. 549, 551 (C.G.Ct.Crim.App.1996). This error in appellant's case is compounded by the government's failure to permit any of appellant's defense counsel to examine the record of trial and provide suggested corrections regarding errors and omissions prior to

---

5. *See also United States v. Thomas*, 41 M.J. 873, 876–77 (N.M.Ct.Crim.App.1995) (commenting on the continuing validity of the underlying principles of *Dunlap*).

6. *United States v. Shely*, 16 M.J. 431, 432 (C.M.A.1983) (emphasis added) (citation omitted) (findings and sentence set aside and charges dismissed under *Banks* test after 439–day delay between completion of court-martial and final action); *see also United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982) (court reporter problems specifically rejected as an acceptable excuse).

the military judge's authentication, as required by R.C.M. 1103(i)(1)(B). Additionally, this R.C.M. 1103 violation could have impeded appellant's statutory right under Article 38, UCMJ, 10 U.S.C. § 838, to file a brief with the convening authority concerning "any objection to the contents of the record." UCMJ art. 38(c)(1); *see also* R.C.M. 1103(i)(1)(B) discussion.

In his appellate brief, appellant asks for eight months' credit against the sentence to confinement, rather than a new action, and describes the prejudice in his case as follows:

> It took the convening authority 12 months to sign off on the appellant's case, and neither the appellant nor his counsel received an authenticated Record of Trial until after the appellant had to submit his R.C.M. 1105 matters and the convening authority took final action. Then, the convening authority failed to serve the appellant and his counsel with the convening authority's action in a timely manner. The cumulative effect of the sloppy and dilatory post-trial processing has resulted in the delay of appellant's case. This Court cannot hear the appellant's appeal until the convening authority takes action. As set forth above, the appellant has submitted several substantive issues for appellate review that could result in the findings being set aside and a rehearing on findings and/or sentence. However, in the mean time (sic), the appellant remains incarcerated, and if appellant's case is reversed or if his sentence is reduced, there is no meaningful remedy to the appellant to compensate him for the time he spent incarcerated waiting on the convening authority and his administratively inept Staff Judge Advocate to properly process this case and forward the Record of Trial to this Court.

 We find that appellant has not demonstrated actual prejudice under *Banks*. However, fundamental fairness dictates that the government proceed with due diligence to execute a soldier's regulatory and statutory post-trial processing rights and to secure the convening authority's action as expeditiously as possible, given the totality of the circumstances in that soldier's case. Consid-ering the record as a whole, that did not happen in appellant's case. The infringement of appellant's statutory rights under Articles 38 and 54, UCMJ, the denial of the opportunity to review the record prior to authentication as required by R.C.M. 1103, the failure to provide a complete copy of the record of trial (to include the allied papers) for use in preparation of R.C.M. 1105 matters, and the unacceptable 10-month delay in preparing the record of trial warrant relief. Congress granted this court "broad power to moot claims of prejudice by 'affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.'" *United States v. Wheelus,* 49 M.J. 283, 288 (1998) (quoting Article 66(c), UCMJ). In our judgment, this is an appropriate case to exercise that authority. We will grant relief in our decretal paragraph in the form of a reduction to the sentence to confinement by four months. UCMJ art. 66(c).

### Decision

We have considered appellant's remaining assignments of error, including the matters asserted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty are affirmed. After considering the entire record, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for ninety-two months, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge TOOMEY and Judge NOVAK concur.