CRAWFORD, Chief Judge
(dissenting):
The majority interprets Articles 66(c) and 59(a) in a manner that is contrary to the principles of statutory construction and legislative intent, as well as inconsistent with 50 years of established practice and case law. In so doing, the majority offers an incomplete recitation of the legislative history of Articles 66(c) and 59(a) and ignores the practical effects of its decision. The majority’s misreading of Article 59 should not be further exacerbated. Unless there has been a substantial violation of an appellant’s rights, the Courts of Criminal Appeals may not use their supervisory authority to grant further relief to the appellant. United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). Instead, this Court should encourage corrective action by those responsible for post-trial delays. Id. at 506 n. 5,103 S.Ct. 1974. Because the majority is engaging in broad judicial rulemaking[1] by *226 amending the Code to expand Article 66(c) and contract Article 59(a), and thereby essentially creating a power of equity in the court below, I must respectfully dissent.
The objectives of the majority and the Army Court of Criminal Appeals in United States v. Collazo, 53 MJ 721 (Army Ct.Crim. App.2000), are well intentioned but lack a doctrinal basis. I wholeheartedly endorse the goal of preventing unexplained or unreasonable post-trial delays, but believe there is a better means of achieving this end without violating the doctrine of separation of powers and principles established for judicial bodies.
The starting point for interpreting a statute is, of course, the plain meaning of that statute. In addition, there are a number of factors that provide a framework for engaging in statutory interpretation. These include the contemporaneous history of the statute; the contemporaneous interpretation of the statute; and subsequent legislative action or inaction regarding the statute. These factors provide a background of the existing customs, practices, and rights and obligations against which to read the statute. Applying these principles of statutory interpretation to Articles 66(c) and 59(a) yields a different result from that reached by the majority.
Article 66(c) provides as follows:
In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.
Additionally, Article 59(a) provides:
A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.
Contemporaneous History. Article 66(c) provides that the Court of Criminal Appeals “may affirm only ... the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.”
By establishing the intermediate appellate courts, Congress intended to eliminate command influence, such as a commander sending an acquittal back to a court-martial for reconsideration. Hearings on H.R. 2498 Before a Subcomm. of the House Comm, on Armed Services, 81st Cong., at 608 (1949)(the “Hearings”). The courts of review could examine not only questions of law, but questions of fact, to preclude command influence. Id. Additionally, Article 66 was intended to grant the Courts of Criminal Appeals discretionary power to modify sentences. These courts would ensure that there was a uniform Code because they would examine courts-martial sentences from throughout the world. The Hearings emphasized, “It is contemplated that this power [under Articles 66 and 59] will be exercised to establish uniformity of sentences throughout the armed forces.” Id. at 1187.
This is reinforced by Professor Morgan’s commentary to Article 66, which provides:
The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense (see Article 59) if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused. See Article 59, Commentary. The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces. See Article 67(g).
Uniform Code of Military Justice: Text, References and Commentary based on the Report of the Committee on a Uniform Code of Military Justice to the Secretary of Defense, at 94 (1950).
*227 The plain meaning of Article 66 is that the Court of Criminal Appeals may “affirm only ... findings and sentences” based on the “entire record.” We have interpreted this statute to allow Courts of Criminal Appeals, based on the entire record of trial, to modify or dismiss charges based on a lack of factual sufficiency, as well as reassess sentences found to be inappropriate. But we have not allowed these courts to go outside the record, for example, by considering two nonjudicial punishments that were inadmissible at trial. See United States v. Redhouse, 53 MJ 246 (2000)(summary disposition). Nor have we allowed the Courts of Criminal Appeals to grant suspension of the punishment. See, e.g., United States v. Darville, 5 MJ 1 (CMA 1978).
Additionally, the plain meaning of the statute in the context of its enactment in 1950 does not support the majority’s position. When Congress wanted to grant discretionary power unrelated to Article 59, it knew how to do so. See Art. 60(c)(2), UCMJ, 10 USC § 860(c)(2)(in acting on the findings or sentence, “convening authority ..., in his [or her] sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part”); see also Art. 60(c)(3)(A) (convening authority may act “in his [or her] sole discretion” in dismissing the charges or specifications).
Authority was not granted to the Courts of Criminal Appeals to grant windfalls unrelated to Article 59 or act in their “sole discretion.” While the authority of the courts below has been commented on by referring to them as the “proverbial 800-pound gorilla,” they may not act on their own whim. United States v. Parker, 36 MJ 269, 273 (CMA 1993)(Wiss, J., concurring). We have not granted these courts power under Article 66(c) to resolve post-trial claims of ineffective assistance of counsel by making findings of fact based on conflicting affidavits from the parties. See, e.g., United States v. Ginn, 47 MJ 236 (1997). Based upon the plain language of the statute and the legislative history, it is improbable that if Congress, was asked, it would grant the authority to the Courts of Criminal Appeals to reduce sentences because of post-trial delay, even though an appellant was not prejudiced.
Contemporaneous Interpretation. In interpreting Articles 66(c) and 59(a), we should examine their construction for the last 50 years by this Court and intermediate service appellate courts. None has reached the conclusion reached by the Army court in Collazo. Additionally, there has been no change to the statutes that might precipitate a statutory reinterpretation. The fact that this remedy has not been previously proposed is good evidence that such was not the intent of Congress.
Legislative Action or Inaction. If Congress wanted to establish the remedy which the majority sanctions, it would have done so at the time of the UCMJ’s enactment, or at any subsequent time that it became dissatisfied with decisions from the courts concerning post-trial delays. Numerous changes to the UCMJ have been enacted by Congress over the last 50 years, many in response to various judicial decisions. No changes have been forthcoming regarding the impact of post-trial delays. The majority’s interpretation simply does not relate to the statutory objectives sought by Congress.
Practical Effects. There are practical reasons for not giving this authority to the lower courts. Contrary to the majority’s assertion, final authority will not rest with the Courts of Criminal Appeals. Final review by this Court will be required to determine whether the lower courts abused their discretion. Neither the courts below nor this Court should be placed in the position of determining what constitutes a request for a delay, what circumstances justify delay, what constitutes extraordinary circumstances, and so forth. We do not have the flexibility or ability to gather facts that the President and his advisors have in exercising their rulemaking authority. Article 36, UCMJ, 10 USC § 836, is a clear grant of authority to the President to formulate these procedural rules. We should not be flirting with amending a statute or the Manual. That role should be left for Congress and the Executive Branch.
*228 We would be shortsighted in not allowing the President and the services to exercise their rulemaking authority within established processes. I agree with Senior Judge Sullivan that neither this Court nor the courts below ought to exercise supervisory authority when the error is harmless. Rulemaking by the Executive Branch or Congress allows for flexibility and advance planning and avoids the distortion that takes place through judicial rulemaking. Once the rules are enacted, they will be subject to judicial review. We will ensure that servicemembers are not prejudiced by post-trial delays.
Twice previously we have sought to interject ourselves into issues of delay through injudicious rulemaking. See United States v. Burton, 21 USCMA 112, 44 CMR 166 (1971); Dunlap v. Convening Authority, 23 USCMA 135, 48 CMR 751 (1974). As to both Burton and Dunlap, we recognized the error and overruled our prior cases. See United States v. Kossman, 38 MJ 258 (CMA 1993); United States v. Banks, 7 MJ 92 (CMA 1979).[2] These later decisions recognize that rules regarding delays should be made by the Executive Branch or Congress, not by this Court or the intermediate appellate courts.
The failure to take action in this case will not frustrate the legislative purpose behind Article 66. In fact, leaving action to the Congress or the President will ensure that the majority achieves its objective. This allows rights and obligations to be protected through the rulemaking process rather than through judicial efforts to amend the Code.
Certainly there should be no unreasonable and unexplained delays. But these rules will be more appropriately adopted by the Legislative or Executive Branch, which are in the best position to decide when and how to chastise staff judge advocates and others in the Executive Branch. Judges should be required immediately to notify the service Clerk of Court or some central authority when a sentence that includes a punitive discharge and one year or more confinement has been imposed. See United States v. Henry, 40 MJ 722, 725 (NMCMR 1994). There can then be an automatic triggering mechanism at 120 days or some other point in time in order to determine whether the convening authority has taken action. The fitness evaluation standards need to be changed: when there are substantial delays, an evaluation of the responsible person or persons should reflect such performance.
If we look to the Executive and Legislative Branches to take action, we will ensure continuity and relative stability in handling delays in post-trial actions. The difficulties associated with court-crafted rules can be seen in the hundreds of published cases and more than a thousand unpublished cases that were decided subsequent to Burton.
For all of the foregoing reasons, I would affirm the court below.

. See United States v. Key, 57 MJ 246 n. * (2002)(Crawford, C.J., concurring in the result).

. See also United States v. Williams, 55 MJ 302 (2001)(no relief granted because there was no showing of prejudice since there was no representation to entitlement of pay beyond expiration of term of service).