UNITED STATES, Appellee,

v.

Private E2 Nicholas S. STACHOWSKI,
United States Army, Appellant.

ARMY 20010260.

U.S. Army Court of Criminal Appeals.

26 June 2003.

For Appellant: Colonel Adele H. Odegard,
JA; Lieutenant Colonel E. Allen Chandler,
Jr., JA; Major Imogene M. Jamison, JA;
Captain Mary E. Card, JA (on brief).

For Appellee: Colonel Lauren B. Leeker,
JA; Lieutenant Colonel Margaret B. Baines,
JA; Major Mark L. Johnson, JA; Captain
Theodore C. Houdek, JA (on brief).

Before CHAPMAN, Senior Judge,
CLEVENGER, and STOCKEL, Appellate
Military Judges.

OPINION OF THE COURT

CHAPMAN, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of larceny (three specifications), forgery (two specifications), and wrongful opening of mail matter, in violation of Articles 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923, and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for 140 days, and reduction to Private E1. The convening authority reduced the period of confinement to 110 days, but otherwise approved the sentence as adjudged.[1] The case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellant asserts that a "231"-day [2] delay between announcement of sentence and final

---

1. Pursuant to a pretrial agreement, the convening authority agreed to refer the charges to a special court-martial empowered to adjudge a bad-conduct discharge. The agreement also required appellant to make restitution of $800.00 to the victim of the larceny before the convening

authority took final action. Apparently, appellant complied with this requirement.

2. Although appellant asserts that the delay between trial and action was 231 days, our reading

action is unreasonable, thus warranting sentence relief. *See United States v. Collazo,* 53 M.J. 721 (Army Ct.Crim.App.2000). He also maintains that the staff judge advocate (SJA) inappropriately recommended that the convening authority deny appellant's request to waive automatic forfeitures. Although we find no merit in either argument, appellant's claim of dilatory post-trial processing warrants further discussion in light of our brother's dissent.

## BACKGROUND

The military judge sentenced appellant on 7 March 2001. Appellant immediately began serving his 140–day sentence to confinement. On 22 May 2001, prior to authentication of the record of trial (ROT) and completion of the post-trial recommendation (SJAR), appellant submitted a clemency petition to the convening authority. The request for clemency focused on obtaining sentence relief so that appellant could be released from confinement in time to be present for the birth of his child, which was projected to be 19 June 2001. The office of the staff judge advocate declined to forward the request to the convening authority because the ROT had not been authenticated. Appellant reiterated his plea for clemency two days later in a second petition under Rule for Courts–Martial [hereinafter R.C.M.] 1105. In this petition, appellant cited *Collazo* and argued that the dilatory post-trial processing of his case prevented him from receiving any meaningful relief.

The court reporter completed transcription of the ROT on 23 July 2001. On 2 October 2001, the military judge completed his authentication of the ROT. The SJA then prepared his SJAR under R.C.M. 1106 on 9 October 2001. In an addendum to the SJAR dated 5 November 2001, the SJA responded to both 1105 submissions explaining the delay and why appellant's requests for clemency were not forwarded to the convening authority. The SJA, "in an abundance of caution," did recommend that the convening authority

of the record reflects that the delay was in fact 268 days.

"grant some additional relief for the approximately eight-month post-trial processing time ... by reducing the sentence to confinement by 30 days over and above any other clemency ... [he] decide[d] to grant." On 30 November 2001, the convening authority followed the SJA's recommendation and disapproved thirty days of appellant's sentence to confinement to compensate for any possible untimely post-trial processing.

## DISCUSSION

Article 59(a), UCMJ, 10 U.S.C. § 859(a), requires this court to fashion appropriate relief when dilatory post-trial processing materially prejudices the substantial rights of an appellant. *See United States v. Hudson,* 46 M.J. 226, 227 (C.A.A.F.1997) (citing *United States v. Jenkins,* 38 M.J. 287 (C.M.A. 1993), and *United States v. Shely,* 16 M.J. 431 (C.M.A.1983)); *United States v. Banks,* 7 M.J. 92, 93–94 (C.M.A.1979). Under the circumstances of the instant case, we find that appellant has not demonstrated actual prejudice. Thus, no prejudicial error occurred.

Appellant argues that, because he had already served his full sentence to confinement by the time the convening authority granted him thirty days' clemency, such credit was "meaningless." Brief on Behalf of Appellant at 3, *United States v. Stachowski,* 58 M.J. 816, 2003 WL 21472268 (Army Ct. Crim.App.2003). In addition, he asserts that the government's tardy actions in bringing his case to final action prevented him from attending the birth of his child. We decline to accept this rationale of prejudice. Accepting appellant's proposition would render all corrective action taken by a convening authority after an appellant has completed his sentence to confinement unacceptable, regardless of the circumstances. Appellant has no right to have his petition for clemency reviewed prior to authentication of the ROT. *See* R.C.M. 1104(e), 1106(d)(1), and 1107(b)(3)(A). Appellant's desire to attend the birth of his child makes it no more of a right.[3]

3. Although our dissenting brother finds prejudice, he seems to agree that attending the birth of a child, although desirable, is not a right given the nature of a soldier's duty. 58 M.J. at ——.

■ In the absence of prejudice to appellant, this court may still grant sentence relief for excessive post-trial delay when the unexplained and unreasonable delay renders the sentence inappropriate. *See* UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F.2002); *United States v. Bauerbach*, 55 M.J. 501, 506–07 (Army Ct.Crim.App.2001); *Collazo*, 53 M.J. at 727. In determining what sentence should be approved, delay in post-trial processing is merely one factor for this court to consider. "In *Collazo*, our court adopted a totality of the circumstances test to determine whether fundamental fairness warranted sentence relief for unreasonable post-trial processing." *Bauerbach*, 55 M.J. at 506 (citation omitted). Applying this test to appellant's case, we hold that appellant's sentence is appropriate.

■ Although somewhat lengthy, the post-trial processing of appellant's case was not excessive. In his addendum to the SJAR, the SJA explained the reasons for the delay to the convening authority. While processing appellant's case, Fort Leonard Wood had only one court reporter, a noncommissioned officer (NCO), who also acted as the noncommissioned officer-in-charge of the military justice division.[4] Burdened with a heavy backlog of contested cases to transcribe, the court reporter utilized a "first in, first out" system to determine the order in which he processed cases. The dissent suggests that the SJA could have better prioritized the backlog of cases, obtained additional military court reporter assets, contracted for civilian court reporters, or requested that the military judge expedite the authentication process. 58 M.J. at ——. Even if such actions were feasible, their absence does not necessarily equate to a "sloppy and lazy approach to the post-trial processing of his [appellant's] case." 58 M.J. at ——.

Assuming, arguendo, that the delay in the post-trial processing of appellant's court-martial was unreasonable, specific relief granted by the convening authority to compensate for such a delay normally moots any need for additional relief from this court. *Bauerbach*, 55 M.J. at 507; *Collazo*, 53 M.J. at 725 n. 2. In appellant's case, the SJA recommended that the convening authority reduce the period of confinement by thirty days because of post-trial processing time. The convening authority followed the SJA's recommendation and approved only 110 days of confinement.

The dissent in this case would have us grant appellant additional relief because he is not convinced that the convening authority's reduction of appellant's confinement had a beneficial impact upon appellant. 58 M.J. at 819 n. 2. He is concerned that the Defense Finance and Accounting Service (DFAS) may not have returned to appellant the automatic forfeitures of two-thirds of appellant's basic pay as a Private E1 for the thirty days of confinement appellant had already served that was later disapproved. *See* UCMJ art. 58(c) and 75(a), 10 U.S.C. §§ 858(c) and 875(a). There is no evidence before this court, however, that appellant did not receive such pay. In fact, the dissenting judge states that he is "not yet convinced that there is a DFAS failure." 58 M.J. at 819 n. 2. Without such an assurance, this court should not grant appellant a windfall.

Finally, in determining whether appellant's sentence is appropriate, we must look at appellant's misconduct. While on emergency leave, appellant's friend entrusted appellant with the keys to his on-post mailbox. The friend asked appellant to watch for a reimbursement check from Hertz–Rent–A–Car and, upon its arrival, forward it to him at his leave address. Instead, upon receipt of the check in the mail, appellant wrongfully opened the letter containing the check, took the check payable to his friend, forged his friend's name, and cashed the check stealing $406.00. Appellant also wrongfully took his friend's checkbook from his barrack's room without permission. Appellant later forged eleven checks taken from this checkbook totaling $555.00.

Appellant also negotiated a favorable pre-trial agreement with the convening authority

---

4. It is not unusual for an NCO court reporter to have other supervisory duties in addition to performing court reporter duties. Staff judge advocates often "multitask" their NCO court reporters to provide them the necessary career progression opportunities to make them competitive for promotion.

that limited the maximum imposable sentence to the jurisdictional limits of a special courts-martial. The approved sentence to confinement for 110 days is even more lenient and not inappropriate.

After careful consideration of all of the facts and circumstances surrounding this case, including the length of the post-trial processing of appellant's court-martial, we conclude that appellant's sentence is fair and reasonable, and should be approved.

We have considered the matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge STOCKEL concurs.

1. In the pretrial agreement in this case, the convening authority agreed to refer the charges to a special court-martial. Appellant, *inter alia*, agreed to make an $800.00 restitution to the larceny victim "by the time the Convening Authority takes final action on this case." The restitution was made before 22 May 2001. The Article 58b, UCMJ, automatic forfeiture of two-thirds of appellant's basic pay would have been effective on 21 March 2001.

2. The general court-martial convening authority directed this relief in his initial promulgating action on 30 November 2001. According to Prosecution Exhibit 3, appellant's term of service expired on 24 September 2001. Based upon a reply from a Defense Finance and Accounting Service (DFAS) official to an inquiry by the clerk of this court, it is unclear that appellant would be paid the automatic forfeitures of two-thirds of appellant's basic pay as a Private E1 (effected pursuant to Article 58b(a), UCMJ) for the thirty days of confinement appellant had already served, thereafter disapproved, but only disapproved after the expiration of term of service (ETS) date. *Contra United States v. Perron*, 58 M.J. 78 (2003) (where the United States Coast Guard pay center restored a servicemember's pay for a period of confinement served which was thereafter set aside and after the ETS date). If not paid, the general court-martial convening authority's order directing that relief was meaningless. Likewise, I am concerned that any similar relief now directed by this court would be meaningless if DFAS officials do not recognize or accept the authority of this court to direct such relief pursuant to Articles 58b(c) and 75(a), UCMJ. Article 58b(c), UCMJ, states:

   If the sentence of a member who forfeits pay and allowances under subsection (a) [the automatic forfeiture provision] is set aside or dis-

CLEVENGER, Judge, dissenting.

Appellant raises two allegations of error. The first is a claim of dilatory post-trial processing that, under the circumstances of this case, I think merits relief by this court. The second, an alleged error in the content of the addendum to the staff judge advocate's (SJA's) post-trial recommendation (SJAR) is, I agree, without merit.

## POST–TRIAL PROCESSING

Appellant was sentenced on 7 March 2001 and began serving his 140 days of confinement immediately.[1] The convening authority ultimately reduced the period of confinement to 110 days.[2] Appellant's girlfriend was due to deliver their baby in June 2001. Originally, 30 June 2001 was targeted as the expect-

approved or, as finally approved, does not provide for a punishment ... [that requires automatic forfeitures], the member shall be paid the pay and allowances which the member would have been paid, except for the [automatic] forfeitures [directed in Article 58b(a)], for the period which the forfeiture was in effect.

Article 75(a), UCMJ, states that "[u]nder such regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved ... shall be restored." The President's regulations are at Rule for Courts–Martial [hereinafter R.C.M.] 1203(c)(2), which provides that "[i]n a case reviewed by it under this rule in which the Court of Criminal Appeals has set aside the sentence ... the Judge Advocate General shall instruct an appropriate convening authority to take action in accordance with the decision of the Court of Criminal Appeals." *See also* R.C.M. 1114 and 1208. Army Reg. 27–10, Legal Services: Military Justice, para. 12–7f(1) (6 Sept. 2002), requires such supplementary court-martial orders, promulgated by a convening or other competent authority, to be distributed so that the Finance and Accounting Office maintaining the pay account is properly informed. I am not yet convinced that there is a DFAS failure. Nor am I convinced that appellant's bad-conduct discharge is inappropriate under all the facts and circumstances of this case. Thus, I do not vote to disapprove the punitive discharge. But if it turns out that we are powerless to actually effect meaningful monetary relief by a reduction in the term of confinement after a soldier's ETS date, then this court will have to reconsider the appropriateness of the only punishment we can meaningfully effect by corrective action.

ed due date, and it was later estimated to be 19 June. Appellant was told at the confinement facility that he could reasonably expect to be released by 28 June 2001. At trial and in their initial post-trial submissions, appellant and the mother-to-be focused on getting appellant released from jail in time to attend the birth of their expected child. As laudable as that desire may be, it is not the important aspect of this case. Many soldiers, serving all over the world every day, do not make it home for the birth of their children.

What makes this case notable is the laziness exhibited by the personnel in the office of the staff judge advocate (OSJA) at Fort Leonard Wood, Missouri, who were responsible for processing military justice matters. The trial began at 1310 hours and ended at 1637 hours on 7 March 2001. The single volume record óf trial (ROT) consists of 103 pages of transcript, 3 prosecution exhibits, 5 appellate exhibits, and the usual allied papers in a special court-martial. At trial, the military judge, explaining a required restitution provision in the pretrial agreement, told appellant:

> Now, after the trial is done and after you are sentenced, in a couple of weeks, the convening authority will get the record and he'll have the opportunity to take action on the case, and that's your deadline to have completed that restitution, and I can't tell you exactly how many days it will be but within several weeks, that case will be ready to go to the convening authority.

On 28 March 2001, three weeks after sentencing, appellant's detailed trial defense counsel, who was stationed at Fort Campbell, Kentucky, petitioned the convening authority for relief in the form of *"disapproving* the automatic forfeitures in this case." (Emphasis added). The request was based in part on the judge's recommendation "that the convening authority consider using his discretionary power to *divert* some portion of the automatic forfeitures which [appellant] would otherwise endure while serving confinement under [Article 58b, UCMJ] to his dependent wife [sic] on behalf of his unborn son." (Em-

phasis added). The judge's factual misperception about the status of the mother-to-be as a "dependent wife" is significant. Appellant was not then married, and the expected child was not yet born. Article 58b, UCMJ, 10 U.S.C. § 858b, only authorizes a convening authority to discretionarily defer (delay) or waive for up to six months the automatic forfeitures under that article. And, if waived, they must be paid "to the dependents of the accused." Rule for Courts–Martial 1101(d) defines a "dependent" by reference to the definition in 37 U.S.C. § 401. Under this statute, at the time of trial, appellant had no dependents for whom Article 58b, UCMJ, authorizes a temporary benefit.[3] Having a nugatory judicial recommendation and a defense counsel request for an inappropriate remedy, there is but little wonder that the convening authority denied appellant's request, on 5 April 2001, upon the advice of his SJA who reasonably interpreted it as a waiver request and applied the correct law.

On 22 May 2001, the defense returned to the fray and submitted matters pursuant to R.C.M. 1105. It was a concise, comprehensive clemency petition that focused on getting appellant released from confinement in time to attend the birth of his child, now expected nine days before appellant's anticipated release date (projected as 19 June and 28 June respectively; in reality, the birth date would turn out to be 15 June). Unfortunately, at that time, seventy-five days after trial, the ROT was still not completed. The defense counsel specifically asked the government to "make sure it [the R.C.M. 1105 clemency request] gets to the CA [convening authority] as soon as possible" in order to obtain "meaningful relief" for appellant before his release date and before the birth of his child. On behalf of the government, Major Timothy Tuckey declined and suggested waiting for the ROT to be completed and the SJAR to be prepared, adding that "[w]e anticipate completing the ROT in early June." Appellant's counsel pointed out that the delay would inevitably negate any meaningful, timely relief for appellant. On 24 May, defense counsel submitted an additional peti-

---

**3.** This is dispositive of appellant's allegation of error in the second footnote of his pleading. An

"unborn child" is not a dependent, nor is a pregnant girlfriend, under Article 58b, UCMJ.

tion under R.C.M. 1105, reiterating his points and adding an allegation that the "unreasonable delay in preparation of the record of trial" was prejudicial to appellant, citing *United States v. Collazo,* 53 M.J. 721 (Army Ct.Crim.App.2000).[4] The defense specifically and reasonably asked that the substance of the requested relief—early release from confinement—be presented to the convening authority no later than 29 May 2001.

The defense could have requested a period of deferment of the sentence to confinement under Article 57a, UCMJ, 10 U.S.C. § 857a. *See* R.C.M. 502(d)(6) discussion (E) and 1101(c). The convening authority had the power to do that without having a ROT and SJAR ready for initial promulgating action under Article 60, UCMJ, 10 U.S.C. § 860. Doubtless this convening authority, like almost all commanders, had an "open door" type policy at Fort Leonard Wood for soldiers who feel they need to present their concerns to a senior commander, and the defense counsel could have tried that avenue for assistance. Although this direct approach remedy is complicated by the Article 60(b)(1), UCMJ, provision that requires the submission of post-trial matters to be "in writing," it was appellant's goal to get the convening authority to consider the issue in a timely manner and, if necessary, to ask the SJA, his lawyer, what the commander could do to help appellant, if the commander wanted to do so. The defense counsel could have sought judicial relief from the military judge detailed to the case in a post-trial hearing under Article 39(a), UCMJ. *See United States v. Tardif,* 57 M.J. 219, 225 (C.A.A.F. 2002). In any event, even if the defense did not do all they could have done, they did clearly ask for relief in a timely manner.

Staff Sergeant Robert Michael, the detailed court reporter, completed the ROT on 23 July 2001—138 days, nearly twenty weeks, after trial. On or about 9 August, the defense counsel received a copy of the ROT for his examination pursuant to R.C.M. 1103(i)(1)(B). He mailed it back on 13 August, and it was signed for as received by the OSJA, Fort Leonard Wood on 16 August by a person named "Z. Elkhosa." On 21 August, the prosecutor, Captain Kirsten M. Mayer, contacted the defense counsel and said the ROT could not be located and asked the defense counsel to return it. On 21 August, the defense counsel provided a copy of the certified mail return receipt showing who had signed for it and when. The government then found the lost ROT in Elkhosa's box in the OSJA.

The military judge, stationed at Fort Leavenworth, Kansas, probably received the ROT on or about 27 August (about twenty-three weeks after the trial ended). He took until 2 October to authenticate it (a period of about thirty-seven days), but he apparently had no knowledge that appellant wanted the post-trial process to be expedited. By late August 2001, appellant had already been released from confinement for two months, and his greatest reason for wanting an expedited review had already arrived.

With the authenticated ROT in hand, the SJA completed his SJAR, dated 9 October 2001. Notwithstanding the substantial R.C.M. 1105 matters already submitted, dated 22 May and 24 May, the SJAR noted appellant's right to submit such matters and stated that "[a]ny such matters will be attached." But there were no attachments to the SJAR at that point. The SJAR was served on appellant's trial defense counsel on or about 15 October, and defense counsel submitted additional matters on 23 October. This submission was focused on seeking an administrative discharge remedy pursuant to Army Reg. 635–200, Personnel Separations: Enlisted Personnel, ch. 10 (1 Nov. 00), as a remedy for the denied opportunity for clem-

---

4. The *Collazo* case was specifically about the excessive amount of time it took the government to process the ROT from the date of sentence to service of the authenticated ROT upon the defense counsel to assist in responding to the SJAR. However, as this court said in *Collazo,* "fundamental fairness dictates that the government proceed with due diligence to execute a soldier's regulatory and statutory post-trial processing rights and to secure the convening authority's action as expeditiously as possible, given the totality of the circumstances in that soldier's case." 53 M.J. at 727. Due diligence means more than mere gross promptness. It requires an appropriate degree of professional consideration to be applied to tasks one is obliged to promptly perform.

ency before the birth of his child and his release from confinement. The request was denied at the time of initial action by the convening authority.

The submission provided a chronology of the alleged dilatory post-trial processing by the government. It also informed the convening authority that the defense had sought clemency in time to affect the release of appellant in time for the birth of his child, but his opportunity for timely clemency had been denied due to the "laziness" of the OSJA in failing to present his request to the convening authority shortly after 22 or 24 May. Unfortunately, this submission repeats the trial defense counsel's erroneous perception as to how and when a convening authority can affect the service of a sentence to confinement by a temporary delay in the confinement process (deferment) or by a reduction in the adjudged period of confinement approved at action (clemency or appropriate relief). While not at the heart of the matter at hand, the error illustrates why military justice practitioners simply must know and understand the basic procedures established by the UCMJ and Rules for Courts–Martial, as well as how to use the technically precise terms in legal correspondence.[5]

On 5 November 2001, the SJA signed an addendum to the SJAR. Bridling at the allegation of "laziness," the SJAR addendum points out in paragraph 2 that only after an authenticated ROT is available can a convening authority take clemency, or any other "action" (meaning "action" under Article 60, UCMJ). He also points out that the judge could have been a source of relief, but the defense elected not to avail themselves of that remedy. The SJA attempts to justify the delay in preparing the ROT in paragraph 3. The SJA explained to his commander, the general court-martial convening authority at Fort Leonard Wood, that "[w]hile our military courts may not recognize OPTEMPO and PERSTEMPO as it relates to availabilities of court reporters and a backlog of courts-martial created when multiple cases, especially contested cases, are tried back-to-back, it is, nevertheless, reality in the field." He also pointed out that the delay was not intended to prejudice appellant and that ROTs in the command were being worked on a "first in, first out basis" by the court reporter who was backlogged by several prior contested cases. Additionally, the court reporter was the only one assigned to the convening authority's post, and he was also acting as the noncommissioned officer-in-charge (NCOIC) of the OSJA's criminal law division "due to NCO personnel shortages." And in paragraph 7, the SJA concluded that appellant "has not established that the government failed to exercise due diligence in the post-trial transcription and processing of this case. In point of fact, the government has moved this case as quickly as our resources have allowed while never losing track of where this case has been." The latter assertion is belied by the defense counsel's 21 August memorandum to the SJA, in essence, telling him where to look for appellant's ROT in his own office. In paragraph 4 the SJA stated, "I do not recommend clemency now."[6] But in paragraph 8, the SJA did recommend disapproving the administrative discharge request and, "in an abundance of caution given current case law," granting appellant "some additional relief for the approximately eight-month post-trial processing time, including the time the Military Judge had the record for authentication, by reducing the sentence to confinement by 30 days."

5. The defense counsel's prompt, energetic efforts on behalf of appellant, post-trial, were commendable. But in his 22 May submission, labeled "R.C.M. 1105 Matters—*United States v. Stachowski*," he failed to expressly reserve in writing the right to submit additional matters. This omission could have allowed the government to invoke the provision of R.C.M. 1105(d)(2) against appellant and refuse to even consider the subsequent 24 May R.C.M. 1105 submission.

6. The addendum also perpetuates some confusion created by the defense when, in their 22 May R.C.M. 1105 submission, they assert that the ROT (which of course they did not have) did not reflect appellant's impact award for service in Kuwait. Apparently, the parties did not recall making a pen and ink correction to appellant's Department of Army Form 2–1, or appellant's unsworn statement at trial about the award. The 9 October SJAR did contain an accurate report of that award.

The SJAR addendum was properly served on defense counsel who replied on 13 November 2001 expressing regret for using the pejorative term "laziness." On 21 November, the SJA received that response and on 30 November the convening authority took action in accordance with the SJA's ultimate recommendation in a supplemental addendum, also dated 30 November. General Court–Martial Order Number (GCMO #) 4 was published on 30 November, promulgating the results of appellant's trial, and on 20 December the convening authority rescinded it in GCMO # 8, belatedly recognizing that appellant's case had been disposed of at a special court-martial. *See* R.C.M. 1114(c). The correct promulgating order, Special Court–Martial Order Number 5, dated 30 November 2001, accompanied the case to The Judge Advocate General of the Army and then to our court. R.C.M. 1111, 1201.

In forwarding the ROT, the SJA, in a continuation of his remarks on the Chronology Sheet on the Department of Defense (DD) Form 490, Record of Trial, alleged:

Just prior to the time of the trial, the court reporter, a Staff Sergeant, was acting as both the Court Reporter and the NCOIC of Military Justice, in order to provide him necessary career progression opportunity as he went into the promotion zone for Sergeant First Class. While performing NCOIC duties, he also continued to perform court reporter duties.

This soldier was the only court reporter at the Fort Leonard Wood, OSJA. The SJA reported that in November and December of the year 2000, Fort Leonard Wood tried four contested cases that each lasted "approximately one week." Thus there was, according to the SJA, an "inevitable backlog" in preparing ROTs. The court reporter did not transcribe this case sooner than any other in the "first in, first out" queue. According to the SJA's remarks on the DD Form 490, the court reporter had "returned to full-time court reporting duties on 1 February 2001," more than a month before this case was tried.[7]

I conclude that the 268 days between the end of trial and the convening authority's action, under the circumstances of this case, is too much time for too little being adequately done. The SJAs certainly knew of the backlog of cases and could have prioritized them rather than letting the court reporter merely work along at his own pace and sequence. Additional military court reporter assets are obtainable, if the need is urgent, or contractible from civilian resources. Judges can be requested to expedite their authentication process by any party. Intra-office personnel assignments can be rearranged to accommodate significant mission requirements. Legal documents can be reviewed both promptly and carefully for consistency and accuracy.[8] In *Collazo*, which was published on 27 July 2000, this court concluded that "[u]ntimely post-trial processing damages the confidence of both soldiers and the public in the fairness of military justice." 53 M.J. at 725–26. The court also warned against the lack of attention to detail, the failure to understand proper post-trial processing requirements, and the lack of urgency that aptly characterizes the post-trial processing by the government in this case. *Id.* at 725. The necessary decision by the convening authority to grant or deny appellant the early or temporary freedom requested had a temporal aspect on 22 May 2001. By mid to late June, the opportunity would be overtaken by events. This was not the "timely review" in post-trial processing appellant is entitled to by right. *Tardif,* 57 M.J. at 222.

---

7. The DD Form 458, Charge Sheet, in this case reflects that "E6 [Staff Sergeant] Robert W. Michael" signed the referral block authenticating Major General Aadland's referral command as the "NCOIC, Criminal Law Division" on 8 February 2001. This military court need not resolve the apparent factual discrepancy.

8. The authenticated ROT did not contain Tab A of the stipulation of fact, which was required by appellant's pretrial agreement. But the five pages of documents, describing "bad check" collection or prosecution actions by three local Missouri counties against the former Fort Leonard Wood soldier whose checks appellant stole and forged, were described on the record by the judge and are found individually in the allied papers attached to the ROT. Accordingly, we are satisfied that the ROT is both complete and verbatim. *United States v. Seal,* 38 M.J. 659, 661–63 (A.C.M.R.1993).

This appellant was ill-served by the government's sloppy and lazy approach to the post-trial processing of his case. Regardless of whether he deserved any clemency in May or June that would have allowed him to be released from confinement earlier than he was, appellant did merit having his request considered by someone who could provide a timely remedy. *See United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982). That is the convening authority's responsibility and, if the SJA cannot get the ROT and other required post-trial documents together in a timely fashion for action, then a simple explanation of the relevant facts and a recommendation for or against an appropriate interim course of action will allow the convening authority to make an intelligent decision affecting the life of a soldier. *See* UCMJ art. 6(b), 10 U.S.C. § 806(b). The failure to provide timely, effectual review of appellant's clemency request, due to the dilatory post-trial processing of his case by the government, substantially prejudiced appellant.

Since there is no evidence before this court that the convening authority's action in reducing the long-since, fully-served period of confinement had any beneficial impact on appellant, I would direct appropriate relief by affirming only so much of the sentence as provides for a bad-conduct discharge, confinement for eighty days, and reduction to Private E1. I would add that all rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored as mandated by Articles 58b(c) and 75(a), UCMJ.