# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 JOSHUA J. CORONA**
**United States Army, Appellant**

ARMY 20130106

Headquarters, United States Army Alaska
David L. Conn, Military Judge
Colonel Tyler J. Harder, Staff Judge Advocate

For Appellant: Major Amy E. Nieman, JA; Lieutenant Colonel David E. Coombs, JA (on brief); Major Yolanda McCray Jones, JA; Lieutenant Colonel David E. Coombs, JA (on reply brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief).

26 February 2015

---------------------------------
SUMMARY DISPOSITION
---------------------------------

HAIGHT, Judge:

A military judge sitting as a general court-martial presumably convicted appellant, pursuant to his pleas, of involuntary manslaughter, in violation of Article 119(b)(1), Uniform Code of Military Justice, 10 U.S.C. §§ 919(b)(1) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for 48 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority also credited appellant with 196 days against his sentence to confinement.

This case is before us pursuant to Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion and relief. Also, one additional issue merits further discussion and relief.

CORONA—ARMY 20130106

*Post-Trial Processing*

Appellant's trial concluded on 4 February 2013. The convening authority did not take action on this case until 14 January 2014, nearly a year later. As this timeline exceeded the standard set forth in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), trial defense counsel asserted this allegation of legal error in appellant's Rule for Courts-Martial 1105 submission, and appellate defense counsel again claims this same error of dilatory post-trial processing.

The court is particularly concerned that it took over two months from the time review by the respective trial counsel was complete to even get the record to the military judge, who then rapidly authenticated it. Also, after authentication, it took the government two months to serve the record and staff judge advocate's recommendation on the accused at his place of confinement. Appellate defense counsel rightly bolsters the complaint of lengthy post-trial processing by pointing out other government missteps along the way. For example, in order to effectuate service on the accused of his copy of the record of trial, the government had to send the record to the joint regional correctional facility (RCF) at Joint Base Lewis-McChord twice, because the facility erroneously and inexplicably refused receipt on the first attempt. Then, even more confounding, after the convening authority took action, the promulgating order was erroneously mailed to the wrong confinement facility, the United States Disciplinary Barracks in Kansas, instead of the appropriate RCF. In fact, the personnel at the facility where appellant was actually confined did not receive notice of the convening authority's action until appellate defense counsel, upon learning of the error, sent them a copy.

*Manslaughter Conviction*

Our review of this record and its various post-trial shortcomings revealed a much more troubling oversight. The facts of this case are that on 22 July 2012, after a night of socializing and drinking, appellant and his friend, Private (PVT) JC, went back with other friends to appellant's house and were talking. The two were not arguing in any fashion, but appellant did say, "I'll shoot you in the head." To which PVT JC replied, "Oh you won't shoot me . . . just shoot me man." The two went into appellant's bedroom and returned to the living room with appellant's pistol. Private JC voluntarily got down on his knees, and appellant ejected a round from the pistol, thinking he had just cleared the weapon. He was mistaken. Appellant then shot and killed PVT JC. *See Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 44.(b)(1), (f)(1).

Appellant was charged with, *inter alia*, manslaughter under Article 119, UCMJ, by "willfully and unlawfully kill[ing] Private [JC] by shooting him in the head with a pistol." We highlight that the above language fully alleges the crime of voluntary manslaughter.

2

Appellant offered to plead guilty without exception or substitution to this offense. The convening authority accepted this offer. At trial, appellant pleaded guilty without exception or substitution to this charge. The military judge found appellant guilty of this charge "in accordance with [appellant's] plea." All post-trial documents, to include the Report of Result of Trial and the Promulgating Order, indicate that appellant was convicted of a willful and unlawful killing or, in other words, voluntary manslaughter.

However, notwithstanding all documents and formal pronouncements pertaining to this court-martial, such as the Charge Sheet, the Pretrial Agreement, the plea, the findings, the Result of Trial, and the Promulgating Order, all parties consistently treated this charge as one of involuntary manslaughter by culpable negligence rather than the charged voluntary manslaughter by willful killing. The problem lies in that all have acted, from trial until now, as if appellant was merely charged with and stands only convicted of causing a death by culpable negligence. But, to the contrary, all documents memorializing what happened at appellant's trial unambiguously signal to any outside observer, such as a clemency and parole board, that appellant was convicted of willfully killing another human being. This is decidedly *not* a distinction without a difference.

At trial, after pleading guilty without exception to voluntary manslaughter, the military judge stated, "Now, you have pled guilty to the Article 119 UCMJ offense of involuntary manslaughter that was alleged in The Specification of Charge II." Neither counsel objected, asked for clarification, or even expressed any level of awareness of the apparent inconsistency. The military judge proceeded to list for appellant the elements of involuntary manslaughter to include the element of culpable negligence. The military judge defined and explained "culpable negligence." The providence inquiry focused on this element and appellant readily admitted his actions amounted to culpable negligence. Furthermore, the stipulation of fact states the shooting of PVT JC "constituted culpable negligence." When discussing the maximum authorized punishment for this offense, all agreed that the maximum sentence included only 10 years of confinement as opposed to the 15 years of confinement authorized in cases of voluntary manslaughter. *See MCM*, pt. IV, ¶ 44.(e)(1), (2). Finally and most curiously, despite the plain language of the specification and appellant's written offer to plead guilty to that specification as charged, the military judge, when discussing the pretrial agreement, stated that appellant had agreed to plead guilty to involuntary manslaughter. The military judge, the prosecution, the defense, and appellant all proceeded throughout trial as if appellant was simply pleading guilty to a charged involuntary manslaughter.

This disconnect has persisted at every stage. While the Result of Trial and the Promulgating Order reflect a conviction of voluntary manslaughter, both appellate defense counsel and appellate government counsel, in their briefs to this court, characterize appellant's conviction as one of only involuntary manslaughter.

CORONA—ARMY 20130106

For two years now, the pertinent documents of this case have left the impression upon all not present in the courtroom on the day of trial that appellant was convicted of a more serious crime than he actually was. We will provide relief.

*Conclusion*

We determine the dilatory post-trial processing in this case is compounded by the other processing errors, not the least of which is the fact that the record does not accurately reflect and, in fact, exaggerates what transpired at appellant's trial. *See United States v. Garman*, 59 M.J. 677, 682 (Army Ct. Crim. App. 2003) (examined post-trial processing errors other than length of delay alone); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000). Not only will we exercise our authority under Articles 59(b) and 66(c) to approve only a finding of guilty to the lesser included offense of involuntary manslaughter, but we will also provide sentence relief.

We AFFIRM only so much of the finding of guilty of the Specification of Charge II as includes the lesser included offense of involuntary manslaughter by culpable negligence. *See* UCMJ art. 119(b)(1). Further, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, confinement for forty-two (42) months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

4